# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION


CHARLES G. BRANT,

      Plaintiff,

v.                                                    Case No.  3:13-cv-412-MMH-SJH

DAVID ALLEN, in his official
capacity as the Warden of Florida
State Prison, and RICKY D.
DIXON, in his official capacity as
the Secretary, Florida
Department of Corrections,

      Defendants.

_____


FRED ANDERSON, JR.,

      Plaintiff,

v.                                                    Case No.  3:14-cv-1148-MMH-SJH

DAVID ALLEN, in his official
capacity as the Warden of Florida
State Prison, and RICKY D.
DIXON, in his official capacity as
the Secretary, Florida
Department of Corrections,

      Defendants.

_____

ETHERIA V. JACKSON,

     Plaintiff,

v.                              Case No. 3:14-cv-1149-MMH-SJH

DAVID ALLEN, in his official
capacity as the Warden of Florida
State Prison, and
RICKY D. DIXON, in his official
capacity as the Secretary, Florida
Department of Corrections,

     Defendants.

_____

JOE ELTON NIXON,

     Plaintiff,

v.                              Case No. 3:14-cv-1152-MMH-SJH

DAVID ALLEN, in his official
capacity as the Warden of Florida
State Prison, and RICKY D.
DIXON, in his official capacity as
the Secretary, Florida Department
of Corrections,

     Defendants.

_____

2

WILLIAM ROGER DAVIS,

     Plaintiff,

v.                                       Case No. 3:18-cv-353-MMH-SJH

DAVID ALLEN, in his official capacity as the Warden of Florida State Prison, and RICKY D. DIXON, in his official
Capacity as the Secretary, Florida Department of Corrections,

     Defendants.

_____

## ORDER

### I. Status

Plaintiffs, Charles G. Brant, Fred Anderson, Jr., Etheria V. Jackson, Joe Elton Nixon, and William Roger Davis are death row inmates of the Florida penal system. Each, through counsel, has initiated a nearly identical action challenging the constitutionality of Florida's lethal injection protocol pursuant to 42 U.S.C. § 1983. See Brant v. Allen, No. 3:13-cv-412-MMH-SJH (Brant); Anderson v. Allen, No. 3:14-cv-1148-MMH-SJH (Anderson II); Jackson v. Allen, No. 3:14-cv-1149-MMH-SJH (Jackson II); Nixon v. Allen, No. 3:14-cv-1152-MMH-SJH (Nixon II); Davis v. Allen, No. 3:18-cv-353-MMH-SJH (Davis). Upon the parties' joint request, the Court consolidated "for purposes of discovery and all other pretrial matters" these cases to serve the interests of

judicial economy and efficiency as well as to avoid unnecessary costs and duplication for the parties. See Brant (Doc. 164).

Brant is proceeding on a Second Amended Complaint, see Brant (Doc. 158; Brant SAC); Anderson is proceeding on a Third Amended Complaint, see Anderson II (Doc. 114; Anderson TAC); Jackson is proceeding on a Third Amended Complaint, see Jackson II (Doc. 119; Jackson TAC); Nixon is proceeding on a Third Amended Complaint, see Brant[1] (Doc. 168; Nixon TAC); and Davis is proceeding on a First Amended Complaint, see Davis (Doc. 75; Davis FAC) (collectively, Amended Complaints).[2] As Defendants, Plaintiffs name the Warden of Florida State Prison (David Allen) in his official capacity, a position in which "he is responsible for all executions and for the administration of lethal injection for the Florida Department of Corrections" (FDOC), and the Secretary of the FDOC (Ricky D. Dixon) in his official capacity where "he is responsible for the creation and enforcement of policies and procedures" applicable to executions by lethal injection. Amended Complaints ¶¶ 15-16.

---

[1] Brant, Anderson, Jackson, and Davis filed their operative complaints before the Court's Order consolidating these cases, and Nixon filed his TAC after the Court's consolidation Order. Thus, unlike Nixon (and Brant), Anderson, Jackson, and Davis's operative complaints have not been filed in the lead case – Brant.

[2] The Court refers to Plaintiffs' operative complaints collectively as Amended Complaints and the exhibits collectively as Amended Complaints Ex. When necessary to distinguish between the five complaints, the Court will cite to the Brant SAC, Jackson TAC, Nixon TAC, Anderson TAC, and Davis FAC specifically.

Before the Court is Defendants' Motion to Dismiss Amended Complaints. See Brant (Doc. 175; Motion). Plaintiffs filed a Response to the Motion, see id. (Doc. 181; Response), and with the Court's permission, Defendants filed a Reply, see id. (Doc. 184; Reply). The Motion is ripe for review.

## II. Florida's Lethal Injection Protocols and Plaintiffs' § 1983 Actions

On January 14, 2000, the state of Florida adopted lethal injection as its primary method of execution for carrying out a death sentence. Sims v. State, 754 So. 2d 657, 664 n.11 (Fla. 2000). While Florida identifies the method of execution by statute, the legislature delegates to the FDOC the responsibility of establishing the specific procedures or drugs to be used. See Valle v. Singer, 655 F.3d 1223, 1227 (11th Cir. 2011). Since the adoption of lethal injection, Florida has used a three-drug protocol. See id.; Muhammad v. State, 132 So. 3d 176, 195 (Fla. 2013); Lightbourne v. McCollum, 969 So. 2d 326, 344-46 (Fla. 2007). The FDOC's first three-drug lethal injection protocol provided for intravenous administration of (1) 5 grams of sodium pentothal, (2) 100 milligrams of pancuronium bromide, and (3) 240 milliequivalents of potassium chloride. Lightbourne, 969 So. 2d at 345 (Sodium Pentothal Protocol).

On December 10, 2010, Jackson filed his first federal § 1983 method-of-execution action challenging the constitutionality of the Sodium Pentothal Protocol. See Jackson v. Singer, No. 3:10-cv-1130-MMH-MCR (M.D. Fla.)

(Jackson I) (Doc. 1).[3] He filed an amended complaint on April 13, 2011. See id. (Doc. 10). In response to the amended complaint, Defendants filed a motion to dismiss arguing that the amended complaint should be dismissed because, among other reasons: (1) Jackson failed to properly exhaust his administrative remedies; (2) Jackson's claims were barred by the applicable statute of limitations; and (3) Jackson's challenge to the Sodium Pentothal Protocol was moot because the FDOC no longer intended to use the Sodium Pentothal Protocol for future executions. See generally id. (Doc. 13). As it turns out, on June 8, 2011, a little over a week before the filing of the motion to dismiss, the FDOC had implemented a new lethal injection protocol that provided for the administration of (1) 2.5 grams of pentobarbital sodium, (2) 200 milligrams of

---

[3] A Court may take judicial notice of its own records and of public records within its own files. See Cash Inn of Dade, Inc. v. Metro. Dade Cnty., 938 F.2d 1239, 1243 (11th Cir. 1991) (district court may take judicial notice of public records within its files relating to particular case before it or to other related cases); ITT Rayonier, Inc. v. United States, 651 F.2d 343, 345 n.2 (5th Cir. 1981) (court may take judicial notice of its own records or of those of inferior courts); Kinnett Dairies, Inc. v. Farrow, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978) (trial court did not err in taking judicial notice of materials in court's own files from prior proceedings); Hurd v. Durrand, No. 12-20899-CIV-MORENO, 2013 WL 1192351, at *7 (S.D. Fla. Jan. 24, 2013), report and recommendation adopted sub nom. Hurd v. Durant, No. 12-20899-CIV-MORENO, 2013 WL 1192342 (S.D. Fla. Mar. 22, 2013) (taking judicial notice of the inmate grievance procedure filed in previous action); Navarro v. City of Riviera Beach, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016) ("Courts may take judicial notice of public records, such as a pleading filed in another court, because such documents are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"). Notably, "judicial notice may be taken only to establish what those documents contain, not the veracity of their contents." Navarro, 192 F. Supp. 3d at 1364 (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)).

pancuronium bromide, and (3) 480 milliequivalents of potassium chloride. See Valle v. State, 70 So. 3d 530, 538 (Fla. 2011) (Pentobarbital Protocol). As a result, the Court permitted Jackson to file an amended § 1983 complaint on March 16, 2012, in which he challenged the constitutionality of the Pentobarbital Protocol. See Jackson I (Doc. 18). In response to this amended complaint, Defendants again moved to dismiss raising many of the same arguments, including that Jackson failed to exhaust his administrative remedies before filing suit and that his claims were barred by the statute of limitations. See generally id. (Doc. 24). Then, on September 4, 2012, the FDOC changed the second drug of its lethal injection protocol by substituting vecuronium bromide for pancuronium bromide. See Pardo v. State, 108 So. 3d 558, 561 (Fla. 2012) (Pentobarbital II Protocol). The Court then permitted Jackson to file a third amended complaint, which he did on April 17, 2013. Jackson I (Docs. 31, 34). Defendants again moved to dismiss the action, arguing that dismissal was warranted because Jackson failed to exhaust his administrative remedies and the claims in the third amended complaint were barred by the statute of limitations. See generally id. (Doc. 36).

On April 18, 2013, Anderson and Brant initiated their first federal § 1983 method-of-execution actions challenging the constitutionality of the Pentobarbital II Protocol. See Anderson v. Palmer, No. 3:13-cv-1431-TJC-JBT

(M.D. Fla.) (<u>Anderson I</u>) (Doc. 1);[4] <u>Brant</u> (Doc. 1). Defendants filed a motion to dismiss Anderson's complaint arguing it should be dismissed because, among other reasons: (1) Anderson's action was barred by the statute of limitations; (2) Anderson failed to properly exhaust his administrative remedies; and (3) Anderson's challenge to the Pentobarbital II Protocol failed to state a claim on which relief could be granted. <u>Anderson I</u> (Doc. 9). That same day, Defendants filed a similar motion to dismiss Brant's complaint. <u>See</u> <u>Brant</u> (Doc. 10). Recognizing that Brant initiated his action within the four-year statute of limitations, Defendants argued that his complaint should be dismissed because Brant failed to exhaust his administrative remedies and he failed to state a claim upon which relief could be granted. <u>See</u> <u>Brant</u> (Doc. 10).

On April 23, 2013, Nixon initiated his first federal § 1983 method-of-execution action challenging the constitutionality of the Pentobarbital II Protocol. <u>See</u> <u>Nixon v. Palmer</u>, No. 3:13-cv-433-MMH-MCR (M.D. Fla) (<u>Nixon I</u> (Doc. 1). Defendants moved to dismiss Nixon's complaint arguing it should be dismissed because, among other reasons: (1) Nixon's action was barred by the statute of limitations; (2) Nixon failed to properly exhaust his administrative remedies; and (3) Nixon's challenge to the Pentobarbital II

---

[4] Anderson initiated his first action in the Ocala Division of the Middle District, but the Court transferred <u>Anderson I</u> to the Jacksonville Division on November 13, 2013. <u>See</u> <u>Anderson I</u> (Doc. 23).

Protocol failed to state a claim on which relief could be granted. Id. (Doc. 11).

Less than four months later, on September 9, 2013, Florida implemented another amended lethal injection protocol that provided for intravenous administration of (1) 500 milligrams of midazolam hydrochloride, (2) 100 milligrams of vecuronium bromide, and (3) 240 milliequivalents of potassium chloride. See Muhammad v. Crews, No. 3:13-cv-1587-J-32JBT, 2013 WL 6844489, at *7 (M.D. Fla. Dec. 27, 2013) (Midazolam Protocol). In light of that change, Nixon, Brant, Anderson, and Jackson moved for leave to amend. See Nixon I (Doc. 23) Jackson I (Doc. 44); Anderson I (Doc. 16); Brant (Doc. 21). Defendants filed a response in opposition, arguing that leave to amend would be futile because, inter alia, Jackson, Anderson, Nixon, and Brant failed to exhaust their administrative remedies with respect to the Midazolam Protocol before filing suit; Jackson, Anderson, and Nixon's action were barred by the statute of limitations; and Jackson, Anderson, Nixon and Brant failed to state a claim upon which relief could be granted. See Nixon I (Doc. 24) Brant (Doc. 23 at 1-2,11); Jackson I (Doc. 46 at 1-2, 13); Anderson I (Doc. 17 at 1-2, 13). Following a joint hearing on Jackson, Brant, and Nixon's motion for leave to amend, the Court directed Jackson, Brant, and Nixon to file a renewed motion to amend, see Jackson I (Docs. 52, 53, 55); Brant (Docs. 30, 31, 33); Nixon I (Docs. 30, 31, 33), and later directed Anderson to do the same, see Anderson I

(Doc. 25).[5] They filed their renewed motions on January 6, 2014. See Jackson I (Doc. 56); Anderson I (Doc. 26); Brant (Doc. 34); Nixon I (Doc. 35). Not surprisingly, Defendants filed similar responses opposing the filing of the amended complaints. See Jackson I (Doc. 58); Anderson I (Doc. 27); Brant (Doc. 35); Nixon I (Doc 36). The Court conducted a second hearing. See Jackson I (Docs. 67, 69); Anderson I (Doc. 34); Brant (Doc. 43); Nixon I (Doc. 44). Thereafter, at the urging of the Court, given the repeated changes to the lethal injection protocol and Defendants' challenges to the sufficiency of those Plaintiffs' presuit exhaustion efforts, Jackson, Nixon, and Anderson agreed to dismiss their first § 1983 actions without prejudice, refile, and pursue their claims in new, separate actions. See Jackson I (Doc. 68); Anderson I (Doc. 39); Nixon I (Doc. 46).[6] The Court dismissed Nixon I and Jackson I without prejudice on August 15, 2014, see Nixon I (Doc. 48); Jackson I (Doc. 73), and dismissed Anderson I without prejudice on August 22, 2014, see Anderson I (Doc. 39). The Court deferred ruling on Brant's Renewed Motion for Leave to File a Second Amended Complaint, see Brant (Doc. 34), pending the resolution of an unrelated issue with counsel's representation and the completion of

---

[5] The Court did not hear argument on Anderson's motion to amend because that case was not transferred to the Jacksonville Division until after the hearing.

[6] In agreeing to dismiss their actions, Jackson, Anderson, and Nixon did not concede that their exhaustion efforts were insufficient, and this Court did not make any factual findings about their exhaustion efforts for the Midazolam Protocol. See Jackson I (Doc. 73); Anderson I (Doc. 39); Nixon I (Doc. 48).

supplemental briefing on the issue of exhaustion. Brant (Doc. 46 at 2).

In September 2014, Jackson, Anderson, and Nixon initiated their second § 1983 actions by filing complaints challenging the Midazolam Protocol. See Jackson II (Doc. 1); Anderson II (Doc. 1); Nixon II (Doc. 1). The Court struck Jackson, Anderson, and Nixon's complaints, finding them to be improper shotgun pleadings, see Jackson II (Doc. 10); Anderson II (Doc. 10); Nixon II (Doc. 12), and Jackson, Anderson, and Nixon filed their first amended complaints on December 1, 2014, see Jackson II (Doc. 14); Anderson II (Doc. 11); Nixon II (Doc. 15). In early May 2015, at the parties' mutual request, the Court stayed all four actions pending the United States Supreme Court's decision in Glossip v. Gross, 576 U.S. 863 (2015). See Jackson II (Doc. 26); Anderson II (Doc. 22); Nixon II (Doc. 27); Brant (Doc. 61). Following the release of the Court's decision in Glossip, in November 2015, the Court briefly lifted the stay, Jackson II (Doc. 29); Anderson II (Doc. 25); Nixon II (Doc. 30); Brant (Doc. 65), but soon reinstated the stay, given the United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016). See Jackson II (Doc. 37); Anderson II (Doc. 32); Nixon II (Doc. 38); Brant (Doc. 75). The Court continued the stay until the Florida Supreme Court issued its decision in Hitchcock v. State, 226 So. 3d 216 (Fla 2017), and determined whether the rule announced in Hurst v. Florida and/or Hurst v. State would apply retroactively. See Jackson II (Docs. 39, 47); Anderson II (Docs. 34, 42); Nixon II (Doc. 40);

<u>Brant</u> (Docs. 79, 87).

During one of these prolonged stays, on January 4, 2017, Florida implemented yet another lethal injection protocol that changed all three drugs used in the Midazolam Protocol. <u>See</u> <u>Brant</u> (Doc. 102 at 32-45). Specifically, the January 2017 protocol provides for intravenous administration of (1) 200 milligrams of etomidate (a sedative); (2) 1000 milligrams of rocuronium bromide (a paralytic agent); and (3) 240 milliequivalents of potassium acetate (a substance to stop the heart). <u>See</u> <u>id.</u> (Etomidate Protocol).[7]

Following the Florida Supreme Court's resolution of the <u>Hurst</u> retroactivity question, and considering the FDOC's implementation of the Etomidate Protocol, the Court reopened <u>Nixon II</u>, <u>Jackson II</u>, <u>Anderson II</u>, and <u>Brant</u> on January 30, 2018. On March 12, 2018, Nixon, Jackson, Anderson, and Brant filed motions for leave to amend to challenge the Etomidate Protocol, with proposed amended complaints attached. <u>Jackson II</u> (Doc. 51); <u>Anderson II</u> (Doc. 46); <u>Brant</u> (Doc. 91); <u>Nixon II</u> (Doc. 52). The next day, March 13, 2018,

---

[7] In February 2019 and May 2021, former FDOC Secretary Mark Inch issued a periodic recertification letter to Governor DeSantis adopting the Etomidate Protocol in essentially the same form as the written protocol implemented by his predecessor in 2017. <u>See</u> Certification Letter from Sec'y Mark S. Inch to Governor Ron DeSantis (May 6, 2021) (available at www.dc.state.fl.us). And in March 2023, Defendant Dixon issued his recertification letter with an attached updated written protocol that supersedes the May 2021 written procedure. <u>See</u> Amended Complaints Ex. A. The March 2023 updated written lethal injection protocol is seemingly identical to the 2017, 2019, and 2021 versions and contains the same three-drug cocktail. Thus, the Court still refers to the current lethal injection protocol as the Etomidate Protocol.

Davis filed his first and only federal method-of-execution case challenging the
constitutionality of the Etomidate Protocol. <u>See</u> <u>Davis</u> (Doc. 1). Over
Defendants' objection,[8] the Court granted Nixon, Brant, Jackson, and
Anderson's requests to amend. <u>Jackson II</u> (Doc. 61); <u>Anderson II</u> (Doc. 56);
<u>Brant</u> (Doc. 101); <u>Nixon II</u> (Doc. 62). And Brant, Anderson, Jackson, and Nixon
filed amended complaints challenging the Etomidate Protocol soon after. <u>See</u>
<u>Nixon II</u> (Doc. 63); <u>Brant</u> (Doc. 102); <u>Anderson II</u> (Doc. 57); <u>Jackson II</u> (Doc.
62).

In May 2018, Defendants filed a motion to dismiss in <u>Davis</u>, alleging (1)
Davis failed to exhaust his administrative remedies; (2) the complaint was an
impermissible shotgun pleading; and (3) Davis failed to state an Eighth
Amendment claim upon which relief could be granted. <u>See</u> <u>Davis</u> (Doc. 12). And
in January 2019, Defendants filed a motion to dismiss in <u>Brant</u>, <u>Jackson II</u>,
<u>Anderson II</u>, and <u>Nixon II</u>, arguing that (1) Brant, Jackson, Nixon, and
Anderson failed to properly exhaust their administrative remedies before filing
suit; (2) Nixon, Anderson, and Jackson's complaints were barred by the statute

---

[8] In opposing Brant, Nixon, Jackson, and Anderson's requests to file amended
complaints, Defendants argued that any amendment would be futile, because: (1)
they failed to properly exhaust their administrative remedies regarding the
Etomidate Protocol before filing their original complaints; (2) the amended
complaints were impermissible shotgun pleadings; (3) Anderson and Jackson's
amendments were time barred; and (4) the amended complaints failed to state a
constitutional claim upon which relief could be granted. <u>See</u> <u>Brant</u> (Doc. 98);
<u>Anderson II</u> (Doc. 53); <u>Jackson II</u> (Doc. 58); <u>Nixon II</u> (Doc. 59).

of limitations; and (3) Brant, Jackson, Nixon, and Anderson failed to state an Eighth Amendment claim upon which relief can be granted. See Brant (Doc. 104); Anderson II (Doc. 60); Jackson II (Doc. 65); Nixon II (Doc. 65).

On August 2, 2019, the Court denied Defendants' motion to dismiss filed in Davis. See Davis (Doc. 30). On September 11, 2019, the Court deferred ruling on Defendants' motion to dismiss filed in Nixon II and stayed and administratively closed that case pending resolution of Nixon's state court intellectual disability claim. See Nixon II (Doc. 79). Thereafter, on September 23, 2019, the Court denied Defendants' motions to dismiss filed in Brant, Jackson II, and Anderson II. See Brant (Doc. 115); Jackson II (Doc. 77). Anderson II (Doc. 73).

In April 2024, the Court granted Nixon's request to lift the stay and reopened his case. See Nixon II (Doc. 89). The Court then granted Brant, Jackson, Anderson, and Davis's joint stipulations consenting to the filing of amended complaints, see Brant (Doc. 159); Jackson II (Doc. 117); Anderson II (Doc. 113); Davis (Doc. 76); and accepted Brant, Jackson, Anderson, and Davis's operative Amended Complaints, see Brant (Doc. 160); Jackson II (Doc. 120); Anderson II (Doc. 115); Davis (Doc. 77).

On May 6, 2024, the parties filed a joint case management report, see Nixon II (Doc. 95), in which they requested that the Court consolidate Nixon II with Brant, Jackson II, Anderson II, and Davis, and advised the Court of

14

Nixon's intent to file an amended complaint. See Nixon II (Doc. 95). In light of this filing, the Court directed Nixon to confer with opposing counsel and file a notice advising the Court whether Defendants intended to stipulate to the filing of an amended complaint. See Nixon II (Doc. 98). After Nixon advised the Court of his intention to file a third amended complaint, see Nixon II (Doc. 99), the Court granted the joint request to consolidate the cases "for purposes of discovery and all other pretrial matters," directed the parties to use the above case heading for all future filings, and instructed that all future filings be made only in the lead case – Brant, see Brant (Doc. 164). Nixon filed his operative TAC on September 13, 2024. See Brant (Doc. 168). Defendants' Motion followed.

## III. **Plaintiffs' Allegations**[9]

In their two-count Amended Complaints, Plaintiffs assert that Florida's Etomidate Protocol, both as written and as applied, poses a substantial risk of serious harm to Plaintiffs in violation of the Eighth Amendment's proscription

---

[9] In considering Defendants' Motion, the Court must accept all factual allegations in the Amended Complaints as true, consider the allegations in the light most favorable to Plaintiffs, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaints and may well differ from those that ultimately can be proved.

against cruel and unusual punishment. See generally Amended Complaints.[10]

In their first claim for relief, Plaintiffs assert that the drug combination used in the Etomidate Protocol raises a substantial risk that they will suffer unnecessary pain during the execution. Id. ¶¶ 77-80. According to Plaintiffs, to not suffer, or face a risk of suffering, etomidate, the first drug, must adequately and fully render them unconscious and insensate to the pain of the second and third drugs and maintain that depth of unconsciousness until death. Id. ¶¶ 29, 34. Plaintiffs contend, however, that etomidate is an inadequate anesthetic because (1) its ultra-short sedating effects are insufficient to ensure that they will remain unconscious throughout the execution; (2) it causes significant pain upon injection; (3) it has no analgesic properties; (4) its side effects, including myoclonus, make the consciousness assessment more difficult; (5) if it comes into contact with rocuronium bromide in the IV, it will precipitate and lead to incomplete delivery; and (6) it can cause "flash pulmonary edema," which will cause the inmate to experience excruciating pain akin to drowning. See id. ¶ 35.

---

[10] Plaintiffs also reference the Fourteenth Amendment. See Amended Complaints ¶¶ 25-26. Because the Amended Complaints do not appear to raise a separate and distinct Fourteenth Amendment claim, it appears that reference is for the proposition that the Eighth Amendment's proscription against cruel and unusual punishment is made applicable to the states through the Fourteenth Amendment. Wilson v. Seiter, 501 U.S. 294, 296-97 (1991).

In support of their allegations, Plaintiffs offer the Declaration of Dr. Gail
Van Norman who opines that etomidate has a re-distribution half-life of two
minutes; Plaintiffs will feel significant pain at the injection site and will
continue to feel pain as the entire 200 mg is pushed into their veins; and
following the administration of the second drug, Plaintiffs would be unable to
convey feeling pain or suffocation. See id. ¶¶ 38, 39, 44; see also Amended
Complaints Ex. B. Plaintiffs also provide the Declaration of Robert Friedman
who witnessed the February 22, 2018 execution of Eric Branch. See Amended
Complaints Ex. C. According to reports, Branch "'screamed at the top of his
lungs' immediately following the administration of etomidate." Amended
Complaints ¶ 40. Plaintiffs also contend that pulmonary edema, or fluid in the
lungs, was present "in virtually all of the available autopsies of prisoners
executed by the Etomidate Protocol." Id. ¶ 51.

According to Plaintiffs, Florida's incremental changes to its execution
procedures confirm etomidate is not appropriate for use in its three-drug
protocol. Amended Complaints ¶¶ 53, 54. Relying on the Declaration of Richard
Kiley, Plaintiffs contend that Defendants now tent the sheet over the inmate's
body, rather than drape it, to hide the inmate's movements from witnesses
during the execution. See id.; see also Amended Complaints Ex. D. They also
provide the Declaration of Neal Dupree who explains Defendants no longer
position the inmate's body perpendicular to the witnesses, but instead point

the inmate's feet directly towards witnesses, obstructing any view of the IV tubes. Amended Complaints ¶¶ 54-55; Amended Complaints Ex. E. But, according to Dupree, despite Defendants' efforts, during the execution of Patrick Hannon in 2017, witnesses observed Hannon's chest heave, and his arms, legs, and body convulse for about two minutes. Amended Complaints Ex. E. Likewise, per Friedman's Declaration, during the execution of Eric Branch, witnesses saw Branch thrash and shake for six minutes following the administration of etomidate. See Amended Complaints Ex. C.

Plaintiffs next assert that Defendants' written lethal injection protocol exacerbates the risk of serious harm associated with etomidate. Amended Complaints ¶¶ 62-68. According to Plaintiffs, the protocol overlooks how etomidate's short-term anesthetic properties affect the consciousness test. Id. ¶¶ 62-63. And Plaintiffs maintain that the current protocol does not require personnel charged with carrying out specific lethal injection tasks to obtain an appropriate level of expertise. Id. ¶¶ 63-65. Plaintiffs provide the Declaration of Dr. J. Robert Sneyd to support their contention that the protocol does not require the execution personnel to understand the nuances of etomidate when conducting the consciousness check. See Amended Complaints Ex. F. Plaintiffs also aver that the protocol does not allow for the individualized assessment of each Plaintiff's medical conditions, and it does not address the appropriate medical response to foreseeable complications. Amended Complaints ¶¶ 67-68.

To that end, they contend that Florida uses an unconstitutional "rolling protocol," during which execution team members consistently and willfully fail to follow the written lethal injection protocol, and their practice of obscuring the witnesses' ability to observe the execution, refusing accommodations for the prisoner's attorneys during the execution, and hiding the IV insertion procedure from view is unconstitutional. Id. ¶¶ 69-75.

As their second claim for relief, Plaintiffs assert that "Defendants' adoption of a protocol with no analgesic drugs and with a paralytic drug that suffocates the condemned and masks the extreme pain caused by all three drugs violates the evolving standards of decency" encompassed in the Eighth Amendment. Id. at 26-27; ¶¶ 81-84. According to Plaintiffs, many death penalty states have abandoned the use of a paralytic and potassium without an analgesic drug. Id. ¶¶ 82. They assert that since 2015, of the "64 executions using a paralytic, Florida accounted for 25% of them (16 executions)." Id. ¶ 83. Plaintiffs maintain that Virginia, which had accounted for three of those paralytic executions, has abolished the death penalty altogether, and Tennessee and Ohio, which accounted for five of those paralytic executions, now have a moratorium on lethal injection. Id.

As readily available alternatives to Florida's current protocol, all Plaintiffs identify "[a] two-drug lethal injection protocol consisting of 100 milligrams of diazepam followed by 7,500 micrograms of fentanyl." Nixon TAC

¶ 86A; Davis FAC ¶ 84A; Jackson TAC ¶ 86A; Brant SAC ¶ 87A; Anderson
TAC ¶ 86A. Brant, Anderson, Nixon, and Davis also propose "[a] three-drug
lethal injection protocol consisting of 2,500 micrograms of fentanyl, 1000
milligrams of ketamine, and 240mEq of potassium chloride or potassium
acetate," as well as "[a] two-drug lethal injection protocol consisting of a pre-
dose of fentanyl followed by a dose of non-compounded FDA-approved or
properly compounded pentobarbital, with safeguards." Brant SAC ¶¶ 87B,
87C; Anderson TAC ¶¶ 86B, 86C; Nixon TAC ¶¶ 86B, 86C; Davis FAC ¶¶ 84B,
84C. Brant, Jackson, and Nixon further suggest "[l]ethal injection by way of
oral injection of secobarbital, with a predose of anti-nausea medication";
"[l]ethal injection by way of oral injection of a four-drug protocol consisting of
1-2 grams diazepam, 50-100 milligrams digoxin, 15 grams morphine sulfate,
and 2 grams propranolol, with a pre-dose of anti[-]nausea medication"; or
"[l]ethal injection by way of oral injection of a four-drug protocol consisting of
100 milligrams digoxin, 1 gram diazepam, 15 grams morphine sulfate, and 8
grams amitriptyline, with a pre-dose of anti[-]nausea medication." Brant SAC
¶¶ 87D, 87E, 87F; Jackson TAC ¶¶ 86D, 86E, 86F; Nixon TAC ¶¶ 86D, 86E,
86F. Jackson, Anderson, and Davis also recommend "[e]xecution by lethal gas
consisting of sevoflurane gas by way of a secure-fitting mask." Jackson TAC ¶
86B; Anderson TAC ¶ 86D; Davis FAC ¶ 84D. Brant and Nixon further suggest
either "[e]xecution by firing squad (chest shot) with a pre-dose of diazepam; or

"[e]xecution by firing squad (head shot) with a pre-dose of diazepam." Brant

SAC ¶¶ 87G, 87H; Nixon TAC ¶¶ 86G, 86H. Additionally, Jackson proposes

"[e]xecution by lethal gas consisting of carbon monoxide gas by way of a secure-

fitting mask," Jackson TAC ¶ 86C; and Anderson recommends "[e]xecution by

lethal gas consisting of administration of pure nitrogen gas by way of a secure-

fitting mask," Anderson TAC ¶ 86E. As relief, Plaintiffs seek: (1) temporary,

preliminary, and permanent injunctive relief prohibiting Defendants from

executing Plaintiffs using the current lethal injection protocol; (2) an order

declaring the existing lethal injection protocol unconstitutional; and (3) an

evidentiary hearing or such other relief as this Court may deem just and

warranted. Jackson TAC at 38; Anderson TAC at 36-37; Nixon TAC at 41;

Brant SAC at 42; Davis FAC 35.

## IV. <u>Motion to Dismiss</u>

### a. Standard

In ruling on a motion to dismiss, the Court must accept the factual

allegations set forth in the complaint as true. See <u>Ashcroft v. Iqbal</u>, 556 U.S.

662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see

also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir.

2002). In addition, all reasonable inferences should be drawn in favor of the

plaintiff. See <u>Randall v. Scott</u>, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless,

the plaintiff must still meet some minimal pleading requirements. <u>Jackson v.</u>

BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while
"[s]pecific facts are not necessary[,]" the complaint should "'give the defendant
fair notice of what the . . . claim is and the grounds upon which it rests.'"
Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp.
v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege
"enough facts to state a claim to relief that is plausible on its face." Twombly,
550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing
Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief
requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal
quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that
"conclusory allegations, unwarranted deductions of facts or legal conclusions
masquerading as facts will not prevent dismissal") (quotations, citation, and
original alteration omitted). Indeed, "the tenet that a court must accept as true
all of the allegations contained in a complaint is inapplicable to legal
conclusions[,]" which simply "are not entitled to [an] assumption of truth."
Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court
must determine whether the complaint contains "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at
678 (quoting Twombly, 550 U.S. at 570).

### b. Summary of the Parties' Arguments

In the Motion, Defendants argue that the Court should dismiss
Plaintiffs' Amended Complaints because: (1) Plaintiffs failed to properly
exhaust their administrative remedies before filing suit; (2) all of Anderson,
Jackson, and Nixon's[11] claims in their Amended Complaints, and all Plaintiffs'
general claims challenging the execution team's lack of training and
qualifications, are barred by the statute of limitations; (3) Plaintiffs fail to state
an Eighth Amendment claim upon which relief can be granted; (4) Plaintiffs'
claims for declaratory and injunctive relief against Defendant Allen are
redundant; and (5) Plaintiffs fail to state a Fourteenth Amendment claim upon
which relief can be granted. See generally Motion.

In their Response, Plaintiffs argue that Defendants have waived and
forfeited any defenses and objections that were not raised in their previous
motions to dismiss, and Defendants have not offered any persuasive
arguments warranting the Court's reconsideration of its previous denials of
Defendants' prior motions to dismiss. Response at 3-6. Plaintiffs also assert

---

[11] In their Motion, Defendants also argue that Davis's claims are barred by the
statute of limitations. Motion at 1. But in their Reply, they acknowledge that Davis
was inadvertently added to this argument and concede the statute of limitations
defense does not apply to his claims. Reply at 2-3.

that the claims in their Amended Complaints are not barred by the statute of
limitations; they state a plausible Eighth Amendment claim; their claims
against Defendant Allen are not redundant; they do not raise a separate
Fourteenth Amendment due process claim but reference the Fourteenth
Amendment to allow their Eighth Amendment claim to apply to Defendants as
state actors; and they exhausted their administrative remedies and/or those
administrative remedies were rendered unavailable. See generally id.

### c. Analysis

### i. Brant, Anderson, Jackson, and Davis

To begin, the Court is compelled to recognize that Brant, Anderson,
Jackson, and Davis's Amended Complaints present the same claims and causes
of action as their prior amended complaints challenging the Etomidate
Protocol. Indeed, as they explain in their Response, "[t]he Operative
[Amended] Complaints merely amend the alternative methods of execution
that each Plaintiff is alleging and discusses [sic] another source of extreme
pain, flash pulmonary edema, that has come to light as Defendants have
executed more individuals using the [E]tomidate [P]rotocol." Response at 5. In
their Reply, Defendants appear to acknowledge that they raise arguments as
to Brant, Anderson, Jackson, and Davis that the Court resolved in its August
2, 2019 Order denying Defendants' motion to dismiss in Davis, see Davis (Doc.
30), and its September 23, 2019 Order denying Defendants' motion to dismiss

in <u>Brant</u>, <u>Anderson II</u>, and <u>Jackson II</u>, <u>see</u> <u>Brant</u> (Doc. 115); <u>Anderson II</u> (Doc.

73); <u>Jackson II</u> (Doc. 77). Reply at 1-2. Defendants contend that because the

Court has yet to rule on their motion to dismiss as to Nixon, any arguments

related to him have not been decided. <u>Id.</u> at 2.

To that end, upon careful review of Defendants' Motion along with their

prior filings and the Court's previous Orders, the Court notes that Defendants'

current statute of limitations argument is identical to the statute of limitations

argument raised in the prior motions to dismiss filed in <u>Jackson II</u> (Doc. 65)

and <u>Anderson II</u> (Doc. 60); and Defendants' present arguments regarding

Plaintiffs' failure to state an Eighth Amendment claim and failure to exhaust

are identical to the arguments Defendants raised in their prior motions to

dismiss filed in <u>Jackson II</u> (Doc. 65), <u>Anderson II</u> (Doc. 60), <u>Brant</u> (Doc. 104 ),

and <u>Davis</u> (Doc. 12). In the Court's August 2, 2019 Order in <u>Davis</u> (Doc. 30), as

well as the Court's September 23, 2019 Order in <u>Jackson II</u> (Doc. 77), <u>Anderson</u>

<u>II</u> (Doc. 73), and <u>Brant</u> (Doc. 115), the Court considered and rejected those

grounds for dismissal. In their current Motion, Defendants have neither

articulated a new basis for dismissal on those grounds, nor have they argued

or highlighted any new legal or factual developments warranting the Court's

reconsideration of its prior Orders. As a result, this Court finds it unnecessary

to repeat its analysis for those issues as to Brant, Anderson, Jackson, and

Davis and adopts and incorporates its prior findings and rulings here. Thus,

25

for the reasons stated in its August 2, 2019 Order, see Davis (Doc. 30), and its

September 23, 2019 Order, see Jackson II (Doc. 77), Anderson II (Doc. 73),

Brant (Doc. 115), the Court will deny Defendants' Motion to the extent that

they seek dismissal of Jackson, Anderson, Brant, and Davis's Amended

Complaints for failure to exhaust and failure to state an Eighth Amendment

claim, as well as their argument that Jackson and Anderson's claims are

barred by the statute of limitations.

However, Defendants contend that because the Court has yet to rule on

the Motion as to Nixon, any arguments related to him have not yet been

decided. Reply at 2. The Court agrees. As such, the Court will address

Defendants' arguments on exhaustion, statute of limitations, and failure to

state an Eighth Amendment claim as pertaining to Nixon only, and then will

address Defendants' redundant defendant argument and failure to state a

Fourteenth Amendment claim defense as pertaining to all Plaintiffs.

### ii. Nixon

#### *a. Exhaustion*

The Prison Litigation Reform Act (PLRA) requires exhaustion of

available administrative remedies before a 42 U.S.C. § 1983 action regarding

prison conditions may be initiated by a prisoner in a district court. See 42

U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions

under section 1983 . . . until such administrative remedies as are available are

exhausted."); <u>see also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). An inmate raising a § 1983 method-of-execution action is not excused from this exhaustion prerequisite. <u>See</u> <u>Hill v. McDonough</u>, 547 U.S. 573, 579-80 (2006) (finding inmate's § 1983 action to enjoin defendants from executing him in manner they intended is a challenge to conditions of confinement); <u>see also</u> <u>Nelson v. Campbell</u>, 541 U.S. 637, 650 (2004) (noting an inmate bringing a method-of-execution claim under § 1983 is subject to state administrative exhaustion rules). Still, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u>

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits[.]" <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008); <u>see also</u> <u>Jones</u>, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" <u>Woodford</u>, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought[.]" <u>Pavao v. Sims</u>, 679 F. App'x 819, 823

(11th Cir. 2017)[12] (citing <u>Jones</u>, 549 U.S. at 211). Not only is there a recognized

exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set

forth in the applicable administrative rules and policies of the institution.

<u>Woodford</u>, 548 U.S. at 93.

> Because exhaustion requirements are designed
> to deal with parties who do not want to exhaust,
> administrative law creates an incentive for these
> parties to do what they would otherwise prefer not to
> do, namely, to give the agency a fair and full
> opportunity to adjudicate their claims.
> Administrative law does this by requiring proper
> exhaustion of administrative remedies, which "means
> using all steps that the agency holds out, and doing so
> properly (so that the agency addresses the issues on
> the merits)."

<u>Id.</u> at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance

with an agency's deadlines and other critical procedural rules[.]" <u>Id.</u>

In <u>Ross v. Blake</u>, the Supreme Court instructed that "[c]ourts may not

engraft an unwritten 'special circumstances' exception onto the PLRA's

exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one

baked into its text: An inmate need exhaust only such administrative remedies

as are 'available.'" 578 U.S. 632, 648 (2016). For an administrative remedy to

---

[12] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. Gov't Emps. Ins. Co.</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that district courts must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First,

> district courts look to the factual allegations in the
> motion to dismiss and those in the prisoner's response
> and accept the prisoner's view of the facts as true. The
> court should dismiss if the facts as stated by the
> prisoner show a failure to exhaust. Id. Second, if
> dismissal is not warranted on the prisoner's view of
> the facts, the court makes specific findings to resolve
> disputes of fact, and should dismiss if, based on those
> findings, defendants have shown a failure to exhaust.
> Id. at 1082–83; see also id. at 1082 (explaining that
> defendants bear the burden of showing a failure to
> exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

The FDOC provides inmates with a three-step grievance process for

exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida
> prisoners is set out in § 33-103 of the Florida
> Administrative Code. Section 33-103 contemplates a
> three-step sequential grievance procedure: (1)
> informal grievance; (2) formal grievance; and then (3)
> administrative appeal. Dimanche, 783 F.3d at 1211.
> Informal grievances are handled by the staff member
> responsible for the particular area of the problem at
> the institution; formal grievances are handled by the
> warden of the institution; and administrative appeals
> are handled by the Office of the Secretary of the
> FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007.
> To exhaust these remedies, prisoners ordinarily must
> complete these steps in order and within the time
> limits set forth in § 33-103.011, and must either
> receive a response or wait a certain period of time
> before proceeding to the next step. See id. § 33-
> 103.011(4).

Pavao, 679 F. App'x at 824. Here, Defendants argue that Nixon failed to

exhaust his administrative remedies because he did not complete the three-

step grievance process for the Etomidate Protocol before initiating Nixon II. Motion at 32-37. Nixon argues that he exhausted his administrative remedies because he completed the three-step grievance process regarding the Midazolam Protocol, the protocol in use at that time, before he filed his original complaint in Nixon II. Nixon TAC ¶ 19. He maintains that the events giving rise to the allegations in his TAC (i.e., the January 4, 2017 unilateral adoption of the Etomidate Protocol) occurred after he filed suit, and "[w]here, as here, a prisoner files a fully exhausted § 1983 challenge to a state's method of execution, and the state later changes the method of execution, the PLRA will not bar the filing of an amended complaint add[ing] a properly exhausted challenge to the new method of execution." Id. ¶ 20. Alternatively, Nixon argues that he did not have to exhaust his administrative remedies because no such remedy was "available." Id. ¶¶ 21-22.

Nixon's allegations about his exhaustion efforts, taken as true, preclude dismissal of this action at the first step of the Turner analysis. See Ross, 578 U.S. at 644. As such, the Court will proceed to Turner's second step and make specific findings to resolve the disputed factual issues related to exhaustion.

In doing so, the Court notes that it rejected the same exhaustion argument by Defendants in its September 23, 2019 Order denying Defendants' motions to dismiss in Jackson II (Doc. 77), Brant (Doc. 115), and Anderson II

(Doc. 73).[13] Indeed, indistinguishable from the circumstances of <u>Jackson II</u>, <u>Brant</u>, and <u>Anderson II</u>, Defendants here do not dispute that before filing his original complaint, Nixon completed the FDOC's three-step grievance process for the Midazolam Protocol. <u>See</u> <u>Nixon II</u> (Doc. 1-2). Defendants also do not dispute that Nixon filed an informal grievance, a formal grievance, and an appeal of the denial of his grievances regarding the January 4, 2017 Etomidate Protocol before filing his TAC. <u>See</u> <u>id.</u> (Doc. 63 at 46-54). Instead, Defendants argue Nixon had to exhaust his allegations about the Etomidate Protocol before filing his original complaint. In other words, they contend that before filing <u>Nixon II</u>, the PLRA required Nixon to exhaust his challenge to a protocol that did not yet exist.[14]

---

[13] In <u>Davis</u>, Defendants argued Davis failed to exhaust his administrative remedies because he did not file a grievance appeal with the Secretary after FDOC officials returned his informal and formal grievances as untimely. <u>See</u> <u>Davis</u> (Doc. 12).

[14] To the extent that Defendants argue that Nixon's grievances failed to contain each factual issue alleged in the TAC to provide the FDOC with notice of the specific claim or sub-claim Nixon was attempting to grieve, <u>see</u> Motion at 36, that argument also lacks merit. Indeed, an inmate complies with the exhaustion requirement "as long as the inmate's grievance provides sufficient detail to allow prison officials to investigate the alleged incident." <u>Maldonado v. Unnamed Defendant</u>, 648 F. App'x 939, 953 (11th Cir. 2016). Notably, in challenging the Etomidate Protocol, Nixon pointed to the short-lasting anesthetic effects of etomidate, explained that it is not suitable as the first drug in the three-drug protocol, and stated that the written protocol increases the deficiencies associated with etomidate. <u>See</u> <u>Nixon II</u> (Doc. 63 at 47-53). The Court finds that Nixon's grievances provided enough detail to notify prison officials that he was grieving the constitutionality of the Etomidate Protocol, so this argument is unavailing.

But as the Court detailed, at length, in its September 23, 2019 Order on Defendants' prior motions to dismiss in <u>Brant</u>, <u>Jackson II</u>, and <u>Anderson II</u>, it declined to accept Defendants' unsupported and narrow construction of the PLRA which would preclude a prisoner from challenging a newly adopted protocol despite having completed the exhaustion process. Rather, where, as here, a prisoner files a fully exhausted § 1983 challenge to a state's method of execution, and the state later changes its method of execution, the PLRA will not bar the filing of an amended complaint adding a properly exhausted challenge to the new method of execution. <u>See</u> <u>Shaw v. Hall</u>, No. 5:12-cv-0135-CAR-MSH, 2013 WL 5571235, at *10 (M.D. Ga. Oct. 9, 2013) (concluding that the "[d]efendants have not persuaded the Court that the exhaustion requirement . . . bars all supplemental claims pertaining to events occurring after an action is filed[]");[15] <u>Romano v. Sec'y, DOC</u>, No. 2:06-cv-375-FtM-29DNF, 2011 WL 1790125, at *4 (M.D. Fla. May 10, 2011) (finding that the plaintiff did not have to exhaust new claims before filing an amended

---

[15] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

complaint);[16] <u>see also</u> <u>Mattox v. Edelman</u>, 851 F.3d 583, 595 (6th Cir. 2017)
(holding "that the PLRA and [Fed. R. Civ. P. 15] permit a plaintiff to amend
his complaint to add claims that were exhausted after the commencement of
the lawsuit, provided that the plaintiff's original complaint contained at least
one fully exhausted claim[]"); <u>Boone v. Nose</u>, 530 F. App'x 112, 113 n.1 (3d Cir.
2013) (noting that "prisoners may file supplemental complaints if the claims in
question . . . have truly accrued since the beginning of the suit and . . . are
exhausted per 42 U.S.C. § 1997e(a) before the supplement is filed[]"); <u>Smith v.
Olsen</u>, 455 F. App'x 513, 515-16 (5th Cir. 2011) (reversing dismissal of claims
raised in a second amended complaint which the plaintiff had exhausted
during the pendency of the action); <u>Rhodes v. Robinson</u>, 621 F.3d 1002, 1005
(9th Cir. 2010) (holding the "[d]efendants' argument that the PLRA requires
the newly-added claims in the [second amended complaint] to have been
exhausted before the original complaint was 'brought' . . . fails because it
ignores the general rule of pleading that the [second amended complaint]
completely supersedes any earlier complaint, rendering the original complaint

---

[16] Other district courts have also read the PLRA to allow, in certain
circumstances, the addition of new fully exhausted claims to a pending prisoner suit.
<u>See</u> <u>Crawford v. Hawkins</u>, No. 5:20-CT-03325-M, 2023 WL 3437806, at *4 (E.D.N.C.
May 12, 2023); <u>Shelton v. Kanode</u>, No. 7:20cv00704, 2023 WL 2639279, at *3 (W.D.
Va. Mar. 27, 2023); <u>Mora v. Chapa</u>, No. 2:14-CV-343, 2017 WL 9249488, at *5 (S.D.
Tex. Jan. 9, 2017), <u>report and recommendation adopted</u>, 2017 WL 1173752 (S.D. Tex.
Mar. 30, 2017).

non-existent and, thus, its filing date irrelevant[]");[17] <u>Barnes v. Briley</u>, 420
F.3d 673, 678-79 (7th Cir. 2005) (holding, in action originally brought under
the Federal Tort Claims Act, that the "filing of amended complaint [containing
newly accrued § 1983 claims] was the functional equivalent of filing a new
complaint . . . and it was only at that time that it became necessary to have
exhausted the administrative remedies" for new claims). Indeed, as the Court
explained in the September 23, 2019 Order:

> This conclusion is particularly appropriate in the context of
> challenges to a method of execution. As Plaintiffs note, Defendants'
> seemingly simple position could ultimately thwart any judicial
> review of an Eighth Amendment challenge to a state's method of
> execution. State defendants, such as the FDOC, wholly control the
> process and timing of implementing a new lethal injection protocol;
> and they have a recognized penological interest in keeping
> information about current and future lethal injection procedures
> confidential. <u>See</u> §§ 922.105(7), 945.10(1)(g), Fla. Stat.; <u>see, e.g.</u>,
> <u>Valle</u>, 655 F.3d at 1237 n.13 (adopting district court's conclusion
> that no due process violation in the FDOC's refusal to reveal
> information about the training of the execution team and the
> source or vendor history of the lethal injection drugs); <u>Sims</u>, 754
> So. 2d at 670 (holding that "determining the methodology and the
> chemicals to be used are matters best left to the Department of
> Corrections . . . "); <u>see also</u> <u>Powell v. Thomas</u>, 641 F.3d 1255, 1257-
> 58 (11th Cir. 2011) (holding Alabama inmate did not have due
> process right to receive notice about changes to execution protocol);
> <u>cf.</u> <u>Ray v. Comm., Ala. Dep't of Corr.</u>, 915 F.3d 689, 703 (11th Cir.
> 2019) (granting stay of execution because confidential nature of

---

[17] In <u>Ramirez v. Collier</u>, 595 U.S. 411, 423 (2022), the Supreme Court briefly
discussed in <u>dicta</u> whether a plaintiff's post-exhaustion amendment could cure an
exhaustion defect that existed at the time the plaintiff's original complaint was filed.
The Supreme Court, citing to <u>Rhodes</u>, stated that "[t]he original [exhaustion] defect
was arguably cured by [the appellant's] subsequent filings" of an amended complaint
and a second amended complaint. <u>Id.</u> But the Court clarified, "[i]n any event, we need
not definitively resolve the issue as respondents failed to raise it below." <u>Id.</u>

Alabama's execution procedure prevented the plaintiff from
raising RLUIPA claim at earlier time). As such, a state can make
repeated changes to its lethal injection protocol at any time and
without any notice. Accepting Defendants' position in this action
would then require a prisoner with a pending method-of-execution
challenge to dismiss that suit, exhaust his administrative
remedies again, and then initiate a new action each time a state
adopts a new protocol without warning. But interpreting the PLRA
in this manner could eventually erect an insurmountable statute
of limitations defense, even if at the time the prisoner first filed his
method-of-execution challenge he did so well within the applicable
statute of limitations as Brant appears to have done here.

The statute of limitations for challenging a method of
execution begins to run not from the date of "any" change to the
method, but rather from the date on which the prisoner "becomes
subject to a new or substantially changed execution protocol."
McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008). Here,
Defendants contend that their adoption of the Etomidate Protocol
"does not constitute a major change" from the previous protocol,
and thus, does not restart the statute of limitations for Jackson
and Anderson. Nevertheless, they argue that Plaintiffs' fully
exhausted challenges to the Midazolam Protocol became moot
when the FDOC changed the protocol and they must each initiate
a new lawsuit to challenge the Etomidate Protocol after
exhausting their administrative remedies. In other words, the
Etomidate Protocol is so new that Plaintiffs must initiate a new
lawsuit to challenge it, but it is not so new as to restart the statute
of limitations. Defendants['] contradictory positions in these cases
demonstrate the impossible barrier that their interpretation of the
PLRA could create.

Brant's case is an example of this very circumstance.
Defendants recognized Brant's method-of-execution action was
timely filed and not subject to a statute of limitations defense. An
amended complaint challenging the revised Etomidate Protocol in
his action would likely relate back to the initial filing date under
Rule 15 of the Federal Rules of Civil Procedure, and thus, similarly
not subject Brant's claim to a statute of limitations obstacle.
Indeed, in the[ir motion to dismiss in] Brant [ ], Defendants do not
assert a statute of limitations argument. Yet, by contending that

Brant must exhaust all administrative remedies for all claims, even those arising later, before challenging the Etomidate Protocol in any lawsuit, Defendants would require Brant to abandon []his timely filed action and file a new one. That later filed action would then undoubtedly face the same statute of limitations defense asserted in <u>Anderson II</u> and <u>Jackson II</u>.

The PLRA was created to "reduce the quantity and improve the quality of prisoner suits." <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). It was not intended to create a complete barrier to review of a state's chosen method of execution. Accepting Defendants' position would mean that a prisoner such as Brant might never be able to accomplish proper exhaustion in a timely manner and a state could ultimately shield its lethal injection protocol from any judicial review. Such was not the purpose of the PLRA. Indeed, where the only issue presented to the Court is a clearly focused § 1983 constitutional claim, and where Defendants simultaneously seek dismissal of these claims on the merits, forcing Plaintiffs to file their Amended Complaints in a new case would do nothing but confound the PLRA's goal to promote efficiency in the resolution of prisoner claims. <u>See</u> <u>Porter</u>, 534 U.S. at 524 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits.").

Further, requiring Plaintiffs to initiate a new case will not resolve these disputes. The frequency with which the FDOC amends its lethal injection protocol coupled with the ever-evolving precedent regarding Florida's death penalty scheme has hindered the Court's ability to efficiently resolve these lethal injection challenges. Indeed, since adopting lethal injection as its primary means of execution, Florida has amended the drug combination of its protocol four times. In his first § 1983 method-of-execution action, Jackson filed a new complaint each time the FDOC issued an amended protocol. When Florida implemented the Pentobarbital II Protocol, Brant and Anderson initiated their first § 1983 method-of-execution actions. Subsequently, Florida adopted the Midazolam Protocol, causing Brant to seek leave to file an amended complaint, and Jackson and Anderson to initiate their current actions in an attempt to avoid the very exhaustion argument Defendants now raise. But for the timely nature of Brant's case, he too would have likely initiated a new action. But

all of these efforts have been in vain as the FDOC again amended its lethal injection procedure, adopting the current Etomidate Protocol, and prompting Plaintiffs' Amended Complaints. As death-sentenced inmates, Plaintiffs have been subject to each version of the FDOC's lethal injection procedure, and until their sentences are carried out, they will be subject to any future version of the protocol. They have diligently pursued their remedies, and due to no fault of their own, they have yet to receive a merits determination on any of their § 1983 complaints challenging Florida's lethal injection procedures.[18] As such, requiring Plaintiffs to initiate a second or third § 1983 method-of-execution action would likely result in Plaintiffs eventually being required to initiate a third or fourth; a situation strikingly similar to the "capable of repetition, yet evading review" exception to the mootness doctrine. See Sierra Club v. Martin, 110 F.3d 1551, 1554 (11th Cir. 1997) (holding "capable of repetition, yet evading review exception" applies to mootness if "(1) there [is] a reasonable expectation or demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration").

For all the above reasons, the Court declines to accept Defendants' narrow construction of the PLRA, which would never allow a prisoner to add a newly accrued fully exhausted claim to an ongoing lawsuit.

Jackson II (Doc. 77), Anderson II (Doc. 73), and Brant (Doc. 115) (record

citations omitted). Thus, because Nixon fully exhausted his claims challenging

the Midazolam Protocol before filing his original complaint, and during the

---

[18] Plaintiffs' diligent efforts are in stark contrast to those of other death-sentenced plaintiffs who have filed § 1983 actions in the eleventh hour after a death warrant is issued. Perhaps ironically, but certainly understandably, in those exigent circumstances, courts have turned to a merits analysis and pretermitted a determination of exhaustion arguments. See Long v. Inch, No. 8:19-cv-1193-MSS-AEP (M.D. Fla. May 19, 2019) (Doc. 21 at 15 n.5); Chavez v. Palmer, No. 3:14-cv-110-J-39JBT, 2014 WL 521067, at *23 (M.D. Fla. Feb. 10, 2014); Muhammad v. Crews, No. 3:13-cv-1587-J-32JBT, 2013 WL 6844489, at *6 n.9 (M.D. Fla. Dec. 27, 2013).

pendency of his case, he exhausted his new claims challenging the Etomidate Protocol before filing his TAC, this action is not subject to dismissal for failure to exhaust.

Alternatively, assuming his exhaustion efforts before filing the TAC cannot cure the alleged exhaustion issue, Nixon's allegations about the unavailability of his administrative remedies, taken as true, preclude dismissal of this action. Relying on the Court's findings in its September 23, 2019 Order in <u>Brant</u>, <u>Anderson II</u>, and <u>Jackson II</u>, Nixon asserts that Defendants' grievance procedure for a method-of-execution challenge "operates as a simple dead end," seemingly because even though the FDOC has apparent authority to grant such administrative relief, the officials decline ever to exercise this authority. <u>See</u> Nixon TAC ¶ 21. Based on that rationale, Nixon appears to contend that he could not have done anything more to exhaust his available administrative remedies, and thus he is relieved of his obligation to complete the grievance procedure for the Etomidate Protocol prior to initiating <u>Nixon II</u>. The Court agrees.

In considering the availability of administrative remedies for Nixon's method-of-execution claims, the Court notes the FDOC's blanket, boilerplate responses to Nixon's grievances challenging both the Midazolam Protocol and the Etomidate Protocol. In denying Nixon's grievances regarding the Midazolam Protocol, the FDOC simply stated "[t]he Department of

39

Corrections['] lethal injection procedure does not violate state or federal
constitutional standards. It is a valid and legal method of execution." Nixon II
(Doc. 1-2). Over three years later, when denying Nixon's grievances regarding
the Etomidate Protocol, the FDOC similarly explained "[t]he Department of
Corrections['] procedure on lethal injection does not violate state or federal
constitutional standards."[19] Id. (Doc. 63 at 47). To the extent that Defendants
argue they had to issue generic responses because Nixon's grievances were too
conclusory, see Motion at 39, the Court finds that argument unconvincing.
Indeed, the FDOC's responses to Nixon's grievances challenging the Etomidate
Protocol neither recognize that the FDOC changed its drug combination nor
the differences between etomidate and midazolam. See Nixon II (Doc. 63 at 46-
54).

The PLRA exhaustion requirement is designed to alert prison officials to
perceived problems and to enable them to take corrective action before federal
litigation is initiated. See Woodford, 548 U.S. at 93. Nixon's efforts to complete
the three-step grievance process before filing his TAC allowed prison officials
to take the precise corrective action for which the PLRA contemplates. But the

---

[19] While the Court does not rely on record evidence submitted in Jackson II,
Brant, and Anderson II, the Court notes that the FDOC issued similar responses
to those Plaintiffs' grievances challenging the Pentobarbital II Protocol, the Midazolam
Protocol, and the Etomidate Protocol. See Brant (Docs. 44-1, 44-2, 102 at 47); Jackson
II (Docs. 1-2, 62 at 47); Anderson II (Docs. 1-3, 57 at 48).

FDOC's boilerplate responses show that it does not intend to consider any challenge to its lethal injection protocol based on inmate grievances. While the FDOC may have "apparent authority" to grant administrative relief, Defendants have not overcome the fact that the FDOC "decline[s to] ever exercise" this authority. See Ross, 578 U.S. at 643. The "facts on the ground" show the FDOC does not intend to consider a prisoner's administrative grievance challenging its lethal injection protocol, so the grievance process is not "'capable of use' for its pertinent purpose." See id. at 642-43 (quoting Booth, 532 U.S. at 736). As such, resolving the parties' disputed issues of fact, the Court finds Nixon could have done nothing more to exhaust his available administrative remedies, and he was thus not required to complete the exhaustion process for the Etomidate Protocol before filing Nixon II. Defendants have not met their burden of showing Nixon failed to exhaust his administrative remedies, and therefore, their request to dismiss his action based on Nixon's alleged failure to exhaust is due to be denied.

### b. Statute of Limitations

Defendants argue that the claims in Nixon's TAC are barred by the statute of limitations. Motion at 1-4. In support, Defendants assert that Nixon was required to file his action by February 13, 2004, within four years of the date Florida adopted lethal injection as a method of execution. Id. at 2. They also assert Florida's change from midazolam to etomidate is not so

"substantial" as to restart the limitations period, and thus Nixon's action must be dismissed. Id. at 4. Defendants also contend that Nixon's general allegations challenging how officials administer or apply the protocol are barred because those assertions "have nothing to do with the substitution of the first drug in the protocol and [instead] relate to Florida's initial adoption of lethal injection in 2000 or, at the very latest, when Florida revamped its protocol in 2007." Id. at 5-6.

Nixon's § 1983 claims are subject to Florida's four-year personal injury statute of limitations. See Henyard v. Sec'y Dep't of Corr., 543 F.3d 644, 647 (11th Cir. 2008). It is well-settled that "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008). Because Nixon's death sentence became final on October 7, 1991, before Florida's adoption of lethal injection as a method of execution, see Nixon v. Florida, 502 U.S. 854 (1991), he needed to bring a lethal injection challenge by February 13, 2004, which is four years after the FDOC implemented lethal injection as its primary method of execution. See Henyard, 543 F.3d at 647. As such, to overcome Defendants' statute of limitations defense, Nixon "must show that he filed his § 1983 complaint within [four] years of a significant change in [Florida's] method of administering lethal injections." Arthur v.

Thomas, 674 F.3d 1257, 1259 (11th Cir. 2012).

The Eleventh Circuit has held that "[w]hether a significant change has occurred in a state's method of execution is a fact-dependent inquiry . . . ." Id. at 1260. Indeed, if a court determines there has not been a "significant change," this conclusion should be "premised on the specific factual allegations and/or evidence presented and considered" in the case. Id. Nevertheless, if the allegations and evidence presented in the case are "materially the same" as those presented and considered in a previous case, the Court may rely on the previous case to find an action to be untimely. See Mann v. Palmer, 713 F.3d 1306, 1313-14 (11th Cir. 2013); see also Gissendaner v. Comm'r Ga. Dep't. of Corr., 779 F.3d 1275, 1282 n.8 (11th Cir. 2015) (finding "a court may dismiss a complaint as untimely – without an evidentiary hearing or discovery – if the allegations and evidence presented are 'materially the same' as those presented in a previous case in which the denial of relief was affirmed").

In his TAC, Nixon alleges that Florida's substitution of etomidate amounts to a "substantial change" because "unlike midazolam, etomidate causes significant pain upon injection. It is ultra-short acting and is likely to wear off before the execution is complete." Nixon TAC ¶ 76. Defendants do not dispute that no other federal or state court has decided whether the substitution of etomidate for midazolam is a "significant change" in Florida's lethal injection protocol for purposes of determining when the statute of

limitations begins to run. As such, the Court finds that Nixon's allegations about etomidate are not so similar to those presented and fully litigated in prior cases such that his TAC is subject to dismissal under Rule 12(b)(6). See Arthur, 674 F.3d at 1260 (noting that just because no court has found a significant change based on the evidence previously presented does not mean that such evidence does not exist). The Court must allow Nixon an opportunity to engage in discovery, and it must consider Nixon's factual allegations before concluding whether the claims are untimely. See id. at 1262 (reversing dismissal under Rule 12(b)(6)). The Court also finds that this ruling applies to Defendants' allegations that Nixon's "general claims challenging the protocol" are barred by the statute of limitations. Thus, Defendants' Motion is due to be denied as to this issue.

### c. Failure to State an Eighth Amendment Claim

Defendants allege that Nixon fails to state an Eighth Amendment claim for which relief may be granted. See Motion at 7-29. They assert that his allegations fail to recognize the Florida Supreme Court's factual findings on the constitutionality of the current lethal injection protocol in Asay v. State, 224 So. 3d 695 (Fla. 2017), and Long v. State, 271 So. 3d 938 (Fla. 2019). Motion at 9-11. They also argue that Nixon's assertions about the Etomidate Protocol having "insufficient safeguards" and his challenge to the use of a paralytic agent have been rejected; his "injection-site-pain" and "ultra-short acting"

44

allegations about etomidate are vague and speculative; Florida's protocol contradicts his "consciousness-check challenge"; and he fails to identify a "known and available" alternative method of execution. Id. at 12-29.

To state an Eighth Amendment method-of-execution claim, a plaintiff must plead facts sufficient to satisfy the two-prong test established in Glossip, 576 U.S. at 877, and Baze v. Rees, 553 U.S. 35 (2008). First, the plaintiff must allege that "the method challenged presents a risk that is 'sure or very likely to cause serious illness and needless suffering,' and gives rise to 'sufficiently imminent dangers.'" Price v. Comm'r, Dep't of Corr., 920 F.3d 1317, 1325-26 (11th Cir. 2019) (quoting Glossip, 576 U.S. at 877; Baze, 553 U.S. at 50)). A "substantial risk of serious harm" does not mean any possibility that the prisoner will suffer pain; rather, the conditions must establish the sort of "objectively intolerable risk of harm that qualifies as cruel and unusual punishment prohibited by the Eighth Amendment." Id. (quotations omitted). Indeed, "the inmate must show a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" Id. Second, the plaintiff must identify "'a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason.'" Id. (quoting Bucklew v. Precythe, 587

U.S. 119, 134 (2019)). "[T]he state must be able to implement and carry out that [alternative] method of execution relatively easily and reasonably quickly, and in a manner that 'in fact significantly reduces a substantial risk of pain' relative to the intended method of execution." Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 868 (11th Cir. 2017) (quoting Glossip, 576 U.S. at 877). Further, in Bucklew, the United States Supreme Court clarified that "[a]n inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law." 587 U.S. at 139-40. Thus, a plaintiff can identify a "well-established protocol in another State as a potentially viable option." Id. at 140. Nevertheless, at the pleading stage, a plaintiff need not prove his Eighth Amendment claim, "he only need[s] to allege sufficient facts to make that claim plausible on its face under Glossip." Lee v. Comm'r, Ala. Dep't of Corr., 731 F. App'x 885, 887 (11th Cir. 2018).

At this time, the Court declines to find that Nixon's claims are foreclosed by the factual findings and legal conclusions made by the Florida Supreme Court in Asay and Long. See Lee, 731 F. App'x at 889 (holding the plaintiff is "entitled to an opportunity to prove – as he alleged in his complaint . . . that the use of midazolam will result in a [substantial] risk of serious harm, and that pentobarbital is available to Alabama, regardless of the factual findings and legal conclusions reached by other courts in separate cases"). Nixon was

not privy to a party in either of those cases, he has not consented to be bound by the findings of <u>Asay</u> and/or <u>Long</u>, and he had no control over the claims, the arguments raised, or the evidence presented in either case. <u>See</u> <u>Grayson v. Warden, Comm'r, Ala. DOC</u>, 869 F.3d 1204, 1223-24 (11th Cir. 2017) (finding district court erroneously relied on issue preclusion and improperly imported factual findings from a separate lethal injection case).

Applying this authority and viewing the facts in the light most favorable to Nixon, as the Court must, the Court finds that the Motion is due to be denied as to Nixon's Eighth Amendment method-of-execution claim. His assertions that etomidate is insufficient to render him insensate throughout the execution present a plausible claim that Florida's lethal injection protocol creates a substantial risk of serious harm. <u>See</u> <u>West v. Warden, Comm'r Ala. DOC</u>, 869 F.3d 1289, 1298 (11th Cir. 2017) (citing <u>Baze</u>, 553 U.S. at 53) (noting "[i]t is uncontested that" failure to "render the prisoner unconscious" would create "a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and the pain from the injection of potassium chloride"). And he has sufficiently pled the existence of plausible, readily available alternatives that would eliminate the alleged risk associated with Florida's current lethal injection procedure. <u>See</u> Nixon TAC ¶¶ 86-140; <u>see also</u> <u>West</u>, 869 F.3d at 1298; <u>Lee</u>, 731 F. App'x at 888. On this record, the Court is persuaded that Nixon's allegations state a plausible Eighth

47

Amendment method-of-execution claim. Thus, Defendants' Motion is due to be denied as to this issue.

### iii. All Plaintiffs

#### a. Redundant Defendant

Defendants contend that Plaintiffs' official capacity claims for declaratory and injunctive relief against Defendant Allen should be dismissed because they are redundant to their official capacity claims against Defendant Dixon. See Motion at 29-31. In Response, Plaintiffs assert their official capacity claims against Allen are not redundant because the Secretary and the Warden "have independent and discreet obligations under Florida law with respect to carrying out executions." Response at 16. They also argue that even if the Court finds that Allen is a redundant Defendant, no precedent suggests that the Court must dismiss Allen. Id. at 17.

Here, Plaintiffs sue Allen in his official capacity as Warden of Florida State Prison because "he is responsible for all executions and for the administration of lethal injection for the [FDOC]", and Dixon in his official capacity as Secretary of the FDOC because "[he] is responsible for the creation and enforcement of policies and procedures" applicable to executions by lethal injection. Amended Complaints ¶¶ 15-16. These allegations highlight each Defendant's different responsibilities under Florida law, and thus the Court

declines to dismiss Defendant Allen as a redundant Defendant. As such, Defendants' Motion is due to be denied as to this issue.

### b. Failure to State a Fourteenth Amendment Claim

Defendants assert that the Eighth Amendment applies to Plaintiffs' method-of-execution claim, and thus any substantive due process claim under the Fourteenth Amendment is immaterial to their actions and must be dismissed. Motion at 32. In their Response, Plaintiffs contend that they do not raise a separate Fourteenth Amendment due process claim, but instead incorporate the Fourteenth Amendment to apply their Eighth Amendment claim to the state actor Defendants. Response at 19-20.

As mentioned, see supra note 10, because Plaintiffs do not raise a separate and distinct Fourteenth Amendment claim, and in light of their representation in their Response, the Court construes Plaintiffs' reference to the Fourteenth Amendment as support for the proposition that the Eighth Amendment's proscription against cruel and unusual punishment is made applicable to the states through the Fourteenth Amendment. Wilson, 501 U.S. at 296-97. Thus, because there is no distinct Fourteenth Amendment claim to dismiss, Defendants' Motion is due to the denied as to this issue.

### V. <u>Conclusion</u>

In sum, Defendants have not offered any persuasive arguments warranting the Court's reconsideration of its August 2, 2019 Order denying

Defendants' motion to dismiss in <u>Davis</u>, <u>see</u> <u>Davis</u> (Doc. 30), or its September 23, 2019 Order denying Defendants' motion to dismiss in <u>Brant</u>, <u>Anderson II</u>, and <u>Jackson II</u>, <u>see</u> <u>Brant</u> (Doc. 115); <u>Anderson II</u> (Doc. 73); <u>Jackson II</u> (Doc. 77). As to Nixon, Defendants have not met their burden of showing he failed to exhaust his administrative remedies, and their statute of limitations and failure to state an Eighth Amendment claim arguments are without merit. The Court also declines to dismiss Defendant Allen as a redundant Defendant, and it finds that Plaintiffs reference the Fourteenth Amendment because it allows them to raise their federal Eighth Amendment claim against Defendants as state actors. For these reasons, Defendants' Motion to Dismiss is due to be denied.

Accordingly, it is

**ORDERED:**

1.    Defendants' Motion to Dismiss Amended Complaints (Doc. 175) is **DENIED**.

2.    By **July 11, 2025**, Defendants must file an answer to Plaintiffs' Amended Complaints.

3.    The Court will enter a separate order on the remaining pending motions (Docs. 185, 187, 188).

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of June, 2025.

MARCIA MORALES HOWARD
United States District Judge

Jax-7
C:    counsel of record