# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

CHARLES G. BRANT,
 Plaintiff,

            CASE NO. 3:13-CV-412 MMH-JBT

v.

DAVID ALLEN, in his official
capacity as the Warden of Florida
Prison, et al.,

 Defendants.

_____/

ETHERIA V. JACKSON,

 Plaintiff,

            CASE NO. 3:14-cv-1149 MMH-JBT
            (consolidated with case no. 3:13cv412)

v.

DAVID ALLEN, in his official
capacity as the Warden of Florida
Prison, et al.,

 Defendants.

_____/

FRED ANDERSON, JR.,

 Plaintiff,

            CASE NO. 3:14-cv-1148 MMH-JBT
            (consolidated with case no. 3:13cv412)

v.

1

DAVID ALLEN, in his official capacity as the Warden of Florida Prison, et al.,

       Defendants.

_____/

WILLIAM ROGER DAVIS,

       Plaintiff,

                         CASE NO. 3:18-cv-353 MMH-JBT
                         (consolidated with case no. 3:13cv412)

v.

DAVID ALLEN, in his official capacity as the Warden of Florida Prison, et al.,

       Defendants.

_____/

JOE ELTON NIXON,

       Plaintiff,

                         CASE NO. 3:14-cv-1152 MMH-JBT
                         (consolidated with case no. 3:13cv412)

v.

DAVID ALLEN, in his official capacity as the Warden of Florida Prison, et al.,

       Defendants.

_____/

2

## JOINT NOTICE OF DISCOVERY ISSUES REQUIRING RESOLUTION

Notice is hereby given that the parties have conferred, pursuant to this Court's requirements, *see* (Doc. 214), regarding the issues contained in Plaintiff's previously filed Motion to Compel. *See* (Doc. 211). After conferral, the parties have not been able to resolve the following Discovery issues:

### Remaining Discovery Issues involving Plaintiff's Discovery

### Plaintiff's Third Request for Production:

2.  Produce any and all records and communications between Defendants and agents of the federal government or any state offering or seeking assistance in procuring drugs for use in executions.

    **Response:** Objections: Defendants reassert the objections raised in response to Requests #12 and 13. The previous objections contemplated that the requests were not relevant to the claims brought, the information would reveal sensitive information protected under Florida law, which includes drug supplier information and execution team members. While Request #13 sought such records only for the period of September 1, 2013, through the date of the request, the Court ultimately sustained Defendants' objections with the limited exception of requiring Defendants to produce documents regarding general efforts to obtain pentobarbital or compounded pentobarbital between January 2017 and the date of the Order (January 2, 2024). Defendants contend that Request #13 did not contemplate any continuing discovery obligation based on its language, nor would the Court overrule Defendants' objection to the extent that that this is a new request in light of the prior ruling.

3

3. Produce any and all records and communications between Defendants and agents of the federal government or any state offering or seeking assistance in developing alternative executions methods.

   **Response:** <u>Objections</u>: To the extent that this request seeks supplemental production as to Requests #15, 17, and 19, Defendants reassert the objections previously raised. The previous objections contemplated that the requests were not relevant to the claims brought, the information would reveal sensitive information protected under Florida law, which includes drug supplier information and execution team members. Further, to the extent that the Court overruled those objections in part by requiring limited production specifically as to the pentobarbital or compounded pentobarbital, no responsive supplemental items exist.

   To the extent that this is a new request for broader production encompassing more than what was requested previously, Defendants reassert the objections raised in response to Requests #15, 17, and 19. Additionally, Defendants object that this request is not relevant to the pending action which is limited to the constitutionality of the lethal injection protocol. This request also implicates sensitive data that would render it more difficult or impossible for the Department to obtain drugs to the extent this request relates to alternative methods of lethal injection, or any potential medical equipment or materials to the extent that it relates to non-lethal injection methods of execution that are not currently used in Florida and are irrelevant to this action.

4. Produce any records and communications with drug manufacturers or medical equipment providers' regarding the manufacturers/providers' objection to their products being used in executions.

   **Response:** <u>Objections</u>: This information is not relevant to the pending action and involves sensitive data that would render it more difficult or impossible for DOC to obtain the drug. Identification of the sources of lethal injection drugs, shelf life, and

expiration dates would serve no useful purpose in this ligation and could serve to impede the legitimate state interest in obtaining such drugs and carrying out the lawful sentence imposed on the Defendant. *See Wellons v. Comm'r Ga. Dept. of Corr.*, 754 F.3d 1260 (11th Cir. 2014); *Chavez v. State*, 132 So. 3d 826, 829-30 (Fla. 2014) (affirming the denial of public records request that sought information about the acquisition of midazolam and its use in Florida's lethal injection protocol, consultations with experts about midazolam before the current lethal injection protocol was issued, the manufacturer and distributor of the drugs used in the lethal injection protocol, and notes and records prepared by the Department with regard to previous executions.").

## Plaintiff's Request for Admissions:

53.   Admit or deny that FDOC has obtained etomidate that is manufactured by a company that refuses to provide or sell drugs to correctional facilities for use in executions.

**Response:** <u>Objections</u>: Defendants object because this request is vague, ambiguous, and unintelligible. Defendants further object because this request is irrelevant and not reasonably calculated to lead to the discovery of relevant, admissible evidence.

54.   Admit or deny that FDOC has used a third party to obtain etomidate that is manufactured by a company that refuses to provide or sell drugs to correctional facilities for use in executions.

**Response:** <u>Objections</u>: Defendants object because this request is vague, ambiguous, and unintelligible. Defendants further object because this request is irrelevant and not reasonably calculated to lead to the discovery of relevant, admissible evidence.

80.   Admit or deny that FDOC has obtained rocuronium bromide that is manufactured by a company that refuses to provide or sell drugs to corrections facilities for use in executions.

**Response:** <u>Objections</u>: Defendants object because this request is vague,     ambiguous,     confusing,     and     capable     of     multiple

5

interpretations. Defendants further object because this request is irrelevant and not reasonably calculated to lead to the discovery of relevant, admissible evidence.

81. Admit or deny that FDOC has used a third party to obtain rocuronium bromide that is manufactured by a company that refuses to provide or sell drugs to correctional facilities for use in executions.

**Response:** <u>Objections</u>: Defendants object because this request is vague, ambiguous, confusing, and capable of multiple interpretations. Defendants further object because this request is irrelevant and not reasonably calculated to lead to the discovery of relevant, admissible evidence.

95. Admit or deny FDOC has obtained potassium acetate that is manufactured by a company that refuses to provide or sell drugs to correctional facilities for a use in executions.

**Response:** <u>Objections</u>: Defendants object because this request is vague, ambiguous, and unintelligible. Defendants further object because this request is irrelevant and not reasonably calculated to lead to the discovery of relevant, admissible evidence.

96. Admit or deny that FDOC has used a third party to obtain potassium acetate that is manufactured by a company that refuses to provide or sell drugs to correctional facilities for use in executions.

**Response:** <u>Objections</u>: Defendants object because this request is vague, ambiguous, and unintelligible. Defendants further object because this request is irrelevant and not reasonably calculated to lead the discovery of relevant, admissible evidence.

174. Admit or deny that other states and/or the federal governments have offered to assist FDOC in obtaining pentobarbital.

**Response:** <u>Objections</u>: Defendants object to this request because it is vague and ambiguous.

179. Admit or deny that the state of Alabama has offered assistance to Florida to implement executions by nitrogen gas.

**Response:** <u>Objections</u>: Defendants object because the term "offered assistance" is vague and ambiguous.

## Remaining Discovery Issues involving Defendants' Discovery

## Defendants' First Request for Production:

1. Please provide any communications, whether they be letters, e-mails, or any other forms of communication sent to or from any person regarding the documents produced (initially as well as subsequently produced in response to ongoing obligations) in response to Plaintiffs' requests for production in this action. If a claim of privilege is made regarding any communication, produce a privilege log in accordance with the requirements of the Federal Rules of Civil Procedure.

**Response:** <u>Objections</u>: Plaintiffs object to this Request No. 1 in its entirety. Specifically, this Request is not reasonably calculated to lead to the discovery of evidence that is relevant to the parties' claims or defenses, and further, is not proportional to the needs of this case. Plaintiffs also object to this Request to the extent that it seeks documents that were prepared in anticipation of litigation or for trial by and/or for another party or its representative and is therefore not discoverable pursuant to the attorney work product privilege. *See* Fed. R. Civ. P. 26(b)(3). Furthermore, this request is overly broad and unduly burdensome and requires unreasonable efforts or expense on behalf of Plaintiffs disproportionate to the needs of the case. Finally, Defendants have failed to make any requisite showing necessitating the need for "discovery on discovery."

Respectfully submitted,

/s/ David M. Poell
David M. Poell (pro hac vice)
Sheppard Mullin Richter &
Hampton, LLP
321 N. Clark Street, 32nd Floor
Chicago, IL 60654
Telephone: 312-499-6349
dpoell@sheppard.com


/s/ Brenna Egan
Brenna Egan (FL Bar No.: 0113544)
Greg Brown (FL Bar No.: 0086437)
Assistant Federal Defenders
Office of the Federal Defender
Middle District of Florida,
Capital Habeas Unit
400 N. Tampa St., Ste. 2625
Tampa, FL 33602
Telephone: 813-228-2715
Brenna_Egan@fd.org
Greg_Brown@fd.org

/s/ Marie-Louise Samuels Parmer
Marie-Louise Samuels Parmer
Florida Bar No. 005584
Samuels Parmer Law
P.O. Box 18988
Tampa, FL 33679
Telephone: 813-732-3321
marie@samuelsparmerlaw.com

**Counsel for Plaintiffs**

JAMES UTHMEIER
ATTORNEY GENERAL

/s/ Scott A. Browne
SCOTT A. BROWNE
Chief Assistant Attorney General
Florida Bar No. 0802743


/s/ Christina Z. Pacheco
CHRISTINA Z. PACHECO
Special Counsel,
Assistant Attorney General
Florida Bar No. 71300
Office of the Attorney General
3507 East Frontage Road, Suite 200
Tampa, Florida 33607-7013
Telephone: (813) 287-7910
Scott.Browne@myfloridalegal.com
Christina.Pacheco@myfloridalegal.com
capapp@myfloridalegal.com

/s/ Erik Kverne
ERIK KVERNE
Corrections Practice Manager – Assistant
Attorney General
Florida Bar No.: 99829
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399
Telephone: (850) 414-3654

**Counsel for Defendants**

8

# Exhibit A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CHARLES G. BRANT,

     Plaintiff,

                            Case No: 3:13-cv-412-J-34JBT
vs.                            Death Penalty Case

BARRY REDDISH, in his official
capacity as the Warden
of Florida State Prison,

MARK INCH, in his official
capacity as the Secretary,
Florida Department of Corrections,

     Defendants.
_____/


**DEFENDANTS' ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET
OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO DEFENDANTS**


     Pursuant to Rules 26 and 33-34 of the Federal Rules of
Civil Procedure, the Defendants, by and through their
attorneys, respond to the following interrogatories under
oath and requests for production of documents, in accordance
with the Definitions and Instructions set forth below:

**<u>Definitions and Instructions:</u>**

A.  "Document or "documents" shall be given the broadest possible meaning under the Federal Rules of Civil Procedure and shall mean and include any writing of any kind, type or description, including, but not limited to, correspondence, letters, memoranda, facsimiles, electronic mail (email), notes, desk calendars, diaries, statistics, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, summaries, pamphlets, books, brochures, interoffice and intra-office communications, notations of any sort of conversation, telephone call messages, meetings or other communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, telefax, worksheets, logs, purchase orders, sales material, voice recordings, transcripts and summaries of meetings, or recordings of meetings, speeches, presentations, records, analyses, schedules, forecasts, surveys, computer data, financial statements, balance sheets, profit and loss statements, statements of earnings, statements of net worth, credit reports, statement of operations, audit reports, financial summaries, statements of lists of assets, figure

2

statistics, agreements, government filings, expense reports, pictures, photographs, drawings, computer cards, tapes, discs, instruction manuals, policy manuals and statements, and every other device or medium by which information of any type is transmitted, recorded or preserved. The term also means a copy where the original is not in your possession custody or control and every copy of a document if such copy is not an identical duplicate of the original.

B.    "Plaintiff" means and includes the plaintiff in this action, and shall include plaintiff's attorneys and persons acting on behalf of each of the foregoing.

C.    "Defendants" shall mean and include any named defendant in this action, and shall include their predecessors, successors, and persons acting on behalf of each of the foregoing.

D.    "You" or "your" shall mean and include each of the Defendants and shall also include the employees, agents, consultants, attorneys and representatives of each of the Defendants.

E.    "FDOC" shall mean and include the Florida Department of Corrections, as well as its present and former officers,

3

directors, employees, agents, and person acting on behalf of each of the foregoing.

F.   "Complaint" shall mean the Plaintiff's Complaint filed in this action on March 8, 2013.

G.   The term "relate," "related" or "relating" means to concern, concerning, referring to, regarding, supporting, containing, recording, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing, establishing or characterizing, either directly or directly, in whole or in part.

H.   "Communications" means and refers to any contact, oral or written, formal or informal, at any time or place and under any circumstances whatsoever, by which information of any nature was transmitted or transferred, including, without limitation, the giving or exchanging of information by speech, gestures, document(s) or any other means, or any request for information by any such means.

I.   These Document Requests cover all documents in your possession, custody, or control, and include all documents in your immediate possession or in the

4

possession of your attorneys or readily available to you through requests upon an agent or consultant of yours.

J.  If you object to any interrogatory or the production of any document requested on the basis of privilege or immunity from discovery, list in your written response to the particular request all such documents in chronological order or produce a privilege log, setting forth as to each the following: (1) date; (2) author(s); (3) recipient(s); (4) description; (5) type of document; (6) subject matter; (7) basis for privilege or immunity; and (8) identity of all persons to who the document or copies were sent.

K.  If any document responsive to this request was, but no longer is, in your possession, custody or control, describe each document and indicate the manner and circumstances under which it left your possession, custody, or control and its present whereabouts, if known.

L.  If any document responsive to this request has been misplaced, discarded, or destroyed, describe each such document and indicate the manner and circumstances under which it was misplaced, discarded, or destroyed, if

known, and its last whereabouts, if known.

M.   These Document Requests and Interrogatories are to be deemed continuing in nature so as to require proper supplemental responses if you obtain further or different information before trial.

N.   Where the name or identity of a person is requested, state the person's full name, age, present and last known home and business address and telephone numbers.

O.   Where the Document Requests and Interrogatories call for knowledge or information of a party, the request includes the knowledge of a party's agents, representatives, and, unless privileged, attorneys.

P.   A request to "describe" and to "explain" includes an identification of all relevant circumstances including but not limited to, identification of persons or dates.

Q.   "Identify" shall mean, when used in reference to any document, to:

    (1)   State the type of document (e.g. letter, contract, memorandum, telegram);

    (2)   State its date;

    (3)   State the title, if any;

    (4)   State the number of pages thereof;

    (5)   Describe its general subject matter and contents;

(6)   Identify its author or originator;

(7)   State the name of each person for whom it was prepared;

(8)   State the name of each person to whom it was delivered and by whom it was received;

(9)   Identify its present location;

(10)  Identify its present custodian;

(11)  If the document is no longer in your possession or subject to your control, identify its last known custodian, describe the circumstances under which it is passed from your control to that person, and identify each person having knowledge of such circumstances and the present location of the document;

(12)  Documents to be identified shall include documents with respect to which a privilege is or may be claimed; and

(13)  Provide the bates number.

R.   "Identify" shall mean, when referring to a person, to provide the following information:

(1)   Full name;

(2)   Present or last known address;

(3)   The last date when such address was known or believed to be correct; and

(4)   Present or last known business affiliation, business address, title and occupation.

S.   "Identify" shall mean, when referring to any act, to:

(1)   Describe the substance or events constituting each act;

7

(2)  Identify the date, duration, location and persons attending or participating in the event or occurrence; and

(3)  Identify each document concerning, referring or relating to each act.

T.  "Lethal Injection Procedures" shall mean all rules, regulations, and/or policies (written or unwritten) governing the administration of intravenous drugs for the purpose of inflicting the death penalty.

U.  "Lethal Injection Team" shall mean the individuals involved in the performance of an execution, including health care professionals, prison officials, and/or any other Department or other state officials, employees, or agents whose presence at an execution is required by the Lethal Injection Procedures.

8

## ANSWERS AND OBJECTIONS TO
## FIRST SET OF INTERROGATORIES

1.  Identify the manufacturer of the etomidate used by Florida for lethal injection.

    **OBJECTION:** This information is not relevant to the pending action and involves sensitive data that would render it more difficult or impossible for DOC to obtain the drug.[1] Jordan v. Comm'r, Mississippi Dep't of Corr., 947 F.3d 1322, 1329 (11th Cir. 2020) (Quashing a third party subpoena, noting that Georgia's source and supply of pentobarbital "has no relevance to the first prong of the Eighth Amendment analysis—the risk of harm presented by Mississippi's method of execution.").

2.  Identify the lot numbers, quantities and expirations dates of the etomidate presently available for use by the Lethal Injection Team.

    **OBJECTION:** This information is not relevant to the pending 8th Amendment claim and would allow Petitioner to identify the manufacturer. See Wellons v. Comm'r, Ga. Dept. of Corr., 754 F.3d 1260, 1267 (11th Cir. 2014) (inmate has no right to know the source of lethal injection drugs).

3.  Identify by name and address the pharmacy, vendor or other source from which Florida obtains or plans to obtain etomidate for use in lethal injection.

    **OBJECTION:** Defendants adopt their objections in Answer 1, above. See also Jordan v. Comm'r, Mississippi Dep't of Corr., 947 F.3d 1322, 1329 (11th Cir. 2020)

---

[1] The Supreme Court has specifically recognized that the source of lethal injection drugs is of little relevance to an Eighth Amendment challenge. Brewer v. Landrigan, 562 U.S. 996 (2010).

(Acknowledging "the states' significant interest in keeping information about the source of their lethal injection drugs secret.).

4.    Identify the person or persons in the FDOC Pharmacy who are responsible for maintaining the supply of the lethal injection drugs.

**OBJECTION:** Under well-established Florida law, the identity of an executioner or any member of the execution team, and anyone else involved directly with an execution or procurement of and preparation of necessary execution drugs is confidential and may not be disclosed. See § 945.10(g), Fla. Stat.; Muhammad v. State, 132 So. 3d 176, 205 (Fla. 2013) ("The provisions of section 945.10 which protect the confidentiality of the identity of members of the execution team have been upheld as constitutional and the Court has subsequently declined to recede from that ruling.") (citing Henyard v. State, 992 So. 2d 120, 130 (Fla. 2008) and Bryan v. State, 753 So. 2d 1244, 1250 (Fla. 2000)).

5.    Identify the manufacturer of the rocuronium bromide used by Florida for lethal injection.

**OBJECTION:** Identity of the rocuronium manufacturer is not relevant to this action and also would reveal sensitive supplier information making the drug difficult or impossible to obtain. Gissendaner v. Comm'r, Georgia Dept. of Corr., 803 F.3d 565, 569 (11th Cir. 2015) ("To require, as Gissendaner is seeking, that Georgia open up about its source of pentobarbital would result in the drug becoming completely unavailable for use in executions, even though its use does not violate the Eighth Amendment."). See also, Objection to #1, above.

6.    Identify the lot numbers, quantities and expirations dates of the rocuronium bromide presently available for use by the Lethal Injection Team.

10

**OBJECTION:** This information could reveal the source of the drugs and is not relevant to the underlying Eighth Amendment claim. See also, Objection to #1, above.

7.  Identify by name and address the pharmacy, vendor or other source from which Florida obtains or plans to obtain rocuronium bromide for use in lethal injection.

**OBJECTION:** Identification of the source or individuals procuring the lethal injection drugs is prohibited. Information about the source is also not relevant to the underlying Eighth Amendment claim. See also, Objection to #1, above.

8.  Identify the manufacturer of the potassium acetate used by Florida for lethal injection.

**OBJECTION:** Identity of the manufacturer is not relevant to this action and also would reveal sensitive supplier information making the drug difficult or impossible to obtain. See also, Objection to #1, above.

9.  Identify the lot numbers, quantities and expirations dates of the potassium acetate presently available for use by the Lethal Injection Team.

**OBJECTION:** This information could reveal the source of the drugs and is not relevant to the underlying Eighth Amendment claim. See also, Objection to #1, above.

10. Identify by name and address the pharmacy, vendor or other source from which Florida obtains or plans to obtain potassium acetate for use in lethal injection.

**OBJECTION:** Identity of the source or procurer of the lethal injection drugs is not relevant to this action and also would reveal sensitive supplier information

11

making the drug difficult or impossible to obtain. <u>See also</u>, Objection to #1, above.

11.  Identify each person, whether or not employed by FDOC, who had any responsibility for the development, drafting, review or approval of the revisions to the lethal injection protocol issued on January 4, 2017, and re-issued on February 27, 2019, and specify for each person the specific responsibilities that he or she had.

**ANSWER AND OBJECTION:** The letter from FDOC adopting the revised February 27, 2019 etomidate protocol identifies the person charged with adopting and promulgating the protocol.[2] Any additional information is not relevant to the underlying action and may make obtaining such sensitive information from such source impossible to obtain in the future.

12.  Set forth in chronological order the date and a description of each significant event in the development, drafting, review, and approval of the revisions to the lethal injection protocol issued on January 4, 2017, and re-issued on February 27, 2019, including but not limited to, meetings; telephone conferences; consultations with experts; contact with the Pharmacy Departments of any Florida college or

---

[2] The Etomidate protocol was first issued on January 4, 2017 and slightly modified and re-issued on February 27, 2019 [to include the potential for additional doses of anti-anxiety medicine].

university; distribution of memoranda, or correspondence (electronic or non-electronic); and approvals by each person whose approval was required; and identify the persons involved in each event.

**ANSWER AND OBJECTION:** The letter from FDOC adopting the updated etomidate protocol identifies the person charged with promulgating the protocol. Any additional information is not relevant to the underlying action and may make obtaining such sensitive information from such source impossible to obtain in the future.

13. Identify each person involved in adopting the following measures used during the last 7 executions:

   a)  Tenting a sheet over the prisoner, including cover the prisoner's feet

   b)  Covering/taping the hands and fingers of the prisoner.

   c)  Changing the position of the prisoner so that the witnesses are viewing his feet rather than a side view.

**OBJECTION:** This information lacks any relevance to Plaintiff's underlying action. This information is protected under well-established state law and is not relevant to a method of execution Eighth Amendment challenge. Asay v. State, 224 So. 3d 695, 700 (Fla. 2017) ("The State's motion to exclude witnesses who were members of the execution team is supported by statutory and case law. § 945.10(g), Fla. Stat. (2017 Members of the execution team are protected from testifying.") (citing Muhammad v. State, 132 So. 3d 176, 189 (Fla. 2013)).

13

14. Identify each person involved in training the execution team, their qualifications and subject matter they are responsible for training the execution team on.

**ANSWER AND OBJECTION:** The protocol lists a class of medical professionals from which the members responsible for achieving and monitoring peripheral venous access, central venous access (if necessary), for examining the inmate prior to the execution to determine whether any relevant medical or health issues exist, for the members responsible attaching the leads to the heart monitors during the execution, and for the members responsible for purchasing, maintaining and mixing the lethal injection drugs. To reveal particular employment, certifications, qualifications and experience of a team member may provide sufficient information for a party to discover the identity of a team member. Accordingly, inquiry into the training and qualifications of DOC personnel which is already spelled out in the protocol, should be precluded. See also, Objection to #13, above.

14

## ANSWERS AND OBJECTIONS TO
## FIRST SET OF DOCUMENT REQUESTS

1. Produce all documents regarding the source, availability, manufacturer, quantity, and expirations dates of the etomidate, rocuronium bromide, and potassium acetate presently available for use by the Lethal Injection Team.

    **OBJECTION:** This information is not relevant to the pending action and involves sensitive data that would render it more difficult or impossible for DOC to obtain the drug.[1]

2. Produce a complete inventory of the etomidate, rocuronium bromide, potassium acetate, and/or any other drug to be used in carrying out executions by lethal injection (hereinafter "lethal injection drugs") currently in the possession of FDOC, including the amount of each drug currently in stock, the dates on which each

---

[1] Identification of the sources of lethal injection drugs, shelf life, and expiration dates would serve no useful purpose in this litigation and could serve to impede the legitimate state interest in obtaining such drugs and carrying out the lawful sentence imposed on the Defendant. See Wellons; Chavez, 132 So. 3d at 829-30 (affirming the denial of public records requests that sought information about the acquisition of midazolam and its use in Florida's lethal injection protocol, consultations with experts about midazolam before the current lethal injection protocol was issued, the manufacturer and distributor of the drugs used in the lethal injection protocol, and notes and records prepared by the Department with regard to previous executions).

order for each drug was placed, the quantify of each drug ordered, the name of the supplier, the address to which each order was shipped, and the date on which FDOC received each order.

**OBJECTION:** This information is not relevant to the Plaintiff's claim and would reveal sensitive information making it impossible for FDOC to obtain lethal injection drugs. See also, Objection to Request #1, above.

3. Produce copies of all local, state, and federal licenses or registrations held by FDOC or any employee of FDOC authorizing the procurement, purchase, possession or transfer of pharmaceuticals. This request includes the initial and renewal applications for all such licensure or registration.

**OBJECTION:** This information is not relevant to Plaintiff's pending claims. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member. Such information is prohibited.

4. Produce FDOC's written response to the Florida Board of Pharmacy's Compounding Survey, emailed and mailed to all Florida Pharmacies on November 27, 2012, imposing a mandatory compliance deadline of December 11, 2012. (A second notice for pharmacies who had not yet complied was mailed on December 4, 2012.)

16

**OBJECTION:** This information is not relevant to Plaintiff's pending claims. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

5.  If FDOC obtained or plans to obtain any lethal injection drugs from a supplier, please produce copies of the order forms used, the date(s) or purchase and the date(s) of receipt.

**OBJECTION:** This information is not relevant to Plaintiff's pending claims and could reveal potential suppliers of drugs and render them unavailable to the State. See also, Objection to Request #1, above.

6.  If FDOC obtained or plans to obtain any lethal injection drugs via prescription, please produce copies of the prescriptions for each drug, the date(s) of purchase and the date(s) of receipt.

**OBJECTION:** Such information, if it exists, is not relevant to Plaintiff's pending claims and could reveal sensitive supplier information. See also, Objection to Request #1, above.

7.  If FDOC obtained or plans to obtain any lethal injection drugs by means other than ordering through a supplier or through a prescription, please provide all documentation of that acquisition, including the date(s) of purchase and the date(s) of receipt. This request encompasses, but is not limited to, letters requesting or authorizing

17

transfer of the drugs or chemicals; and all logs pertaining to the issue, including drug logs, property logs and chain of custody logs.

**OBJECTION:** Such information, if it exists, is not relevant to Plaintiff's pending claims and could reveal sensitive supplier information. See also, Objection to Request #1, above.

8.  Produce copies of all logs pertaining to the receipt, use and disposal of all lethal injection drugs.

**OBJECTION:** Such information, if it exists, is not relevant to Plaintiff's pending claims and could reveal sensitive supplier information. See also, Objection to Request #1, above. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

9.  Produce photocopies of all packaging, labels, instructions and documents that adorn or accompany the lethal injection drugs' containers as received from any third party and as currently in possession of FDOC.

**OBJECTION:** Such information, if it exists, is not relevant to Plaintiff's pending claims and could reveal sensitive supplier information. See also, Objection to Request #1, above.

10. Produce package inserts for the lethal injection drugs currently in FDOC's possession and copies of all writings on the packaging containing the lethal injection drugs currently in FDOC's possession.

18

**ANSWER AND OBJECTION:** Such information, if it exists, is not relevant to Plaintiff's pending claims and could reveal sensitive supplier information. See also, Objection to Request #1, above.

11. Produce all documents relating to the disposition of all expired lethal injection drugs in FDOC's possession between September 1, 2013 and today.

    **OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information. See also, Objection to Request #1, above. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

12. Produce all communications, internal or external, regarding efforts by FDOC to obtain any of the lethal injection drugs between September 1, 2013 and today.

    **OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information. See also, Objection to Request #1, above. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

13. Produce all documents relating to all attempts by FDOC to acquire any of the lethal injection drugs, successful or unsuccessful, between September 1, 2013 and today.

    **OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information. See also, Objection to Request #1, above. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient

19

information for a party to discover the identity of a team member.

14. Produce all studies or reports relied upon by FDOC in their decision making process to substitute etomidate for midazolam in the lethal injection procedures.

**OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information.

15. Produce all documentation of consultation by FDOC with outside parties regarding the decision to substitute etomidate for midazolam in the lethal injection procedures.

**OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

16. Produce all studies or reports relied upon by FDOC in their decision making process to substitute rocuronium bromide for vecuronium bromide in the lethal injection procedures.

**OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

20

17.  Produce all documentation of consultation by FDOC with outside parties regarding the decision to substitute rocuronium bromide for vecuronium bromide in the lethal injection procedures.

**OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

18.  Produce all studies or reports relied upon by FDOC in their decision making process to substitute potassium acetate for potassium chloride in the lethal injection procedures.

**OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

19.  Produce all documentation of consultation by FDOC with outside parties regarding the decision to substitute potassium acetate for potassium chloride in the lethal injection procedures.

**OBJECTION:** This information is not relevant to Plaintiff's claims and could reveal sensitive supplier or FDOC information. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

21

20. Produce all documentation reflecting FDOC's attempts to obtain and actual acquisition of the active pharmaceutical ingredient (API) in pentobarbital, and all documentation reflecting that a compounding pharmacy, or any individual(s) inside or outside of DOC, planned to prepare or actually prepared pentobarbital from the API.

   **ANSWER AND OBJECTION:** <u>See</u> attached testimony of Stephen Whitfield, Chief of Pharmaceutical Services at the Florida Department of Corrections, in the case of <u>Long v. State</u>, SC19-726. (PCR3/6271). There are no other responsive documents.

21. Produce all documentation reflecting FDOC's attempts to obtain and actual acquisition of veterinary pentobarbital.

   **ANSWER AND OBJECTION:** There are no responsive documents. In addition, if such documents existed, they would not be relevant to Plaintiff's Eighth Amendment challenge. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

22. Produce all documentation reflecting the Food and Drug Administration (FDA) approval status of any and all pentobarbital, or its API, sought or actually obtained by FDOC from any source in any form, and all

22

correspondence concerning the FDA approval status of such pentobarbital.

**ANSWER AND OBJECTION:** There are no responsive documents. In addition, if such documents existed, they would not be relevant to Plaintiff's Eighth Amendment challenge. Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

23. Produce all documents referring to, or used in connection with, each of the events described in the response to Interrogatory 12.

**OBJECTION:** This information is not relevant to Plaintiff's pending Eighth Amendment claim and could reveal sensitive supplier information. See also, Objection to Request #1, above.

24. Produce any and all communications between FDOC and Dr. Mark Dershwitz, FDOC and Daniel Buffington, and FDOC and Dr. Steven Yun or any other corrections, pharmacology, anesthesiology, or medical experts outside FDOC who consulted on the changes to the execution procedures in the January 4, 2017 protocol and/or when the protocol was re- issued on February 27, 2019.

**ANSWER AND OBJECTION:** The protocol spells out in detail the drugs and procedure Florida employs in conducting lawful executions. Revealing the source of any unnamed or named consultant would jeopardize Florida's ability to obtain such information in the future. Moreover, the requested information is not relevant to any of Plaintiff's pending claims.

23

25. Produce the full autopsy reports conducted on Mark Asay, Cary Lambrix, Patrick Hannon, Eric Branch, Jose Antonio Jimenez, Bobby Joe Long (AKA Robert Long) and Gary Ray Bowles along with any accompanying documents, test results and notes or tape recordings by the Medical Examiner made during the autopsies.

**OBJECTION AND ANSWER:** This document was generated by a non-party to this litigation, the Eighth District Medical Examiner's Office, and must be requested from that office subject to the rules governing release of those records. Autopsy reports made by a district medical examiner pursuant to Ch. 406, F.S., are public records and are open to the public for inspection in the absence of an exemption. AGO 78-23.

The autopsies for the requested inmates may be obtained by submitting a public records request to:

Eighth District Medical Examiner
William F. Hamilton, MD
606 SW 3rd Avenue
Gainesville, Florida 32601

The public records request can be sent via email to:

Ricardo Camacho, Operations Manager
Forensic Medicine Division
Department of Pathology, Immunology & Laboratory Medicine
University of Florida College of Medicine
**ricardocamacho@ufl.edu**

26. Produce the required execution logs for the training sessions for the executions of Mark Asay, Cary Lambrix, Patrick Hannon, Eric Branch, Jose Antonio Jimenez, Bobby Joe Long (AKA Robert Long) and Gary Ray Bowles along with

24

any accompanying document, notes, reports, or tape recordings of the training sessions.

**OBJECTION:** The training logs contain sensitive information regarding times and other information which could reveal the identities of execution team members. See § 945.10(g), Fla. Stat.; Muhammad v. State, 132 So. 3d 176, 205 (Fla. 2013) ("The provisions of section 945.10 which protect the confidentiality of the identity of members of the execution team have been upheld as constitutional and the Court has subsequently declined to recede from that ruling.") (citing Henyard v. State, 992 So. 2d 120, 130 (Fla. 2008) and Bryan v. State, 753 So. 2d 1244, 1250 (Fla. 2000)). Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

27. Produce the required execution logs for the executions of Mark Asay, Cary Lambrix, Patrick Hannon, Eric Branch, Jose Antonio Jimenez, Bobby Joe Long (AKA Robert Long) and Gary Ray Bowles along with any accompanying document, notes, reports, or tape recordings of the training sessions.

**OBJECTION:** Plaintiff's request for any "execution" log is overbroad and vague. Further, any such log would potentially reveal information regarding the arrival times of execution team members and pose a potential threat to the safety and security of those team members. This information necessarily implicates institutional security concerns and potentially compromises the identity, safety and security of execution team personnel. See § 945.10(g), Fla. Stat.; Muhammad v. State, 132 So. 3d 176, 205 (Fla. 2013) ("The provisions of section 945.10 which protect the confidentiality of the identity of members of the execution team have been upheld as constitutional and the Court has subsequently

25

declined to recede from that ruling.") (citing <u>Henyard v. State</u>, 992 So. 2d 120, 130 (Fla. 2008) and <u>Bryan v. State</u>, 753 So. 2d 1244, 1250 (Fla. 2000)). Moreover, to reveal particular employment, certifications, or licenses may provide sufficient information for a party to discover the identity of a team member.

28. Produce the list of witnesses who attended the executions of Mark Asay, Cary Lambrix, Patrick Hannon, Eric Branch, Jose Antonio Jimenez, Bobby Joe Long (AKA Robert Long) and Gary Ray Bowles, along with any requests to witness those executions.

   **OBJECTION**: Pursuant to section 922.11, Florida Statutes, "[t]welve citizens selected by the warden shall witness the execution." Plaintiff has not established any particularized need for the witness list or its relevance to these proceedings. Witnesses have the right to privacy and many of them are victims' family members.

29. Produce the guidelines or policies about who is permitted to witness an execution and identify whether there have been any deviations from those guidelines or policies for the executions of Mark Asay, Cary Lambrix, Patrick Hannon, Eric Branch, Jose Antonio Jimenez, Bobby Joe Long (AKA Robert Long) and Gary Ray Bowles, and state the reasons for any deviation.

   **OBJECTION**: This information is not relevant to any pending claim.[2]

---

[2] In <u>Houchins v. KQED, Inc.</u>, 438 U.S. 1, 12 (1978) (plurality), the Court explained that the extent to which penal institutions should be open "is clearly a legislative

30. Produce all documents regarding any preparations prior to the executions of Mark Asay, Cary Lambrix, Patrick Hannon, Eric Branch, Jose Antonio Jimenez, Bobby Joe Long (AKA Robert Long) and Gary Ray Bowles, including any instructions for any planned changes, additions, or deletions from the established procedures.

   **OBJECTION:** Any such documents if they exist, could implicate the identity and security of execution team members. Also, such documents, if they exist, are not relevant to any pending claim. The protocol spells out, in detail, Florida's execution procedure. Cf. Sepulvado v. Jindal, 729 F.3d 413, 420 (5th Cir. 2013) ("There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol.").

31. Produce all documents from the debriefing of the executions of Mark Asay, Cary Lambrix, Patrick Hannon, Eric Branch, Jose Antonio Jimenez, Bobby Joe Long (AKA Robert Long) and Gary Ray Bowles, including any descriptions about difficulties with venous access or deviations from the established procedures.

---

task which the Constitution has left to the political processes." The Court further noted that the judiciary cannot force prisons to allow access to facilities. Doing so improperly "involve[s] [the Court] in what is clearly a legislative task which the Constitution has left to the political processes." Id. at 13.

27

**OBJECTION:** Such documents, if they exist, are not relevant to any pending claim and could reveal members of the execution team members in violation of Florida law. See also, Objection to Request #26, above.

Dated: April 15, 2020     Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

/s/ Scott A. Browne
SCOTT A. BROWNE
Chief Assistant Attorney General
Florida Bar No. 0802743

/s/ Timothy A. Freeland
TIMOTHY A. FREELAND
Senior Assistant Attorney General
Florida Bar No. 0539181

Office of the Attorney General
3507 East Frontage Road, Suite 200
Tampa, Florida 33607-7013
Telephone: (813) 287-7910
Facsimile: (813) 281-5501
scott.browne@myfloridalegal.com
E-Service: capapp@myfloridalegal.com

*Counsel for Defendants*

/s/ Joe Belitzky
JOE BELITZKY
Senior Assistant Attorney General
Florida Bar No. 0217301
Office of the Attorney General
The Capitol – PL-01
Tallahassee, Florida 32399-2500
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Joe.Belitzky@myfloridalegal.com

*Counsel for Defendants*

28

## VERIFICATION OF INTERROGATORY ANSWERS

Pursuant to 28 U.S.C. § 1746, I declare under penalties of perjury that I have read the foregoing the Answers to the First Set of Interrogatories within the "Defendants' Answers and Objections to Plaintiff's First Set of Interrogatories and Requests for Production of Documents Directed to Defendants," which is in response to said interrogatories served by Plaintiff Charles G. Brant for the Defendants, and confirm that the Answers stated herein are true and correct.

JOHN PALMER
Director of Institutions
Region II Office
Florida Department of Corrections
Declarant

4/17/20

Date

29

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of April, 2020, a true and correct copy of the foregoing document was served via email on the following persons: Marie-Louise Samuels Parmer, Esq., The Samuels Parmer Law Firm, PA, Post Office Box 18988, Tampa, Florida 33679, **marie@parmerdeliberato.com**; and David M. Poell, Esq., Sheppard Mullin Richter & Hampton LLP, 70 West Madison Street, 48th Floor, Chicago, IL 60602, **dpoell@sheppardmullin.com**.

/s/ Scott A. Browne
*Counsel for Defendants*

30